Norris LENAMOND, Appellant,

v.

NORTH SHORE SUPPLY COMPANY, Appellee.

No. C14–83–021CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 2, 1984.

Rehearing Denied March 8, 1984.

Jerry D. Conner, Houston, for appellant.

Frank Shaw, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

JUNELL, Justice.

Norris Lenamond appeals from a judgment granted to appellee, North Shore Supply Company, against the appellant, John Quire, and Norwest Fabricating Co., Inc., jointly and severally for $8,462.72 and $2,500.00 as reasonable attorney fees, plus interest. John Quire and Norwest Fabricating Co., Inc. are not parties to this appeal. We affirm the trial court's judgment.

This is a suit by appellee against Norwest Fabricating Co., Inc., for collection of an open account for materials sold and delivered, and against appellant and John Quire as guarantors of the account. Appellee's claim against appellant is founded on a guaranty agreement contained in a credit application made by Norwest to appellee. Appellant's defense at trial was that the signature on the guaranty agreement which appeared to be the appellant's was forged. The trial court found the signature to be genuine and entered judgment against appellant on the guaranty.

Appellant's first point of error is that the trial court abused its discretion in denying appellant's request for a jury trial. The trial court denied appellant's request for a jury trial because it determined that the request was not made a reasonable time before the trial set on June 8, 1982. Rule 216 of the Texas Rules of Civil Procedure states:

"No jury trial shall be had in any civil suit, unless application be made therefor, and unless a fee of five dollars if in the district court ... be deposited by the applicant with the Clerk to the use of the County on or before appearance day or, if thereafter, a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than ten days in advance. The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet."

The effect of Rule 216 is that if the demand and payment for a jury trial

are received more than ten days before the trial date, there is a presumption that the demand has been made within a reasonable time. When the demand and payment are not made more than ten days prior to the date of trial, it is within the discretion of the court whether to allow a jury to be empaneled. The burden then rests on appellant to show an abuse of that discretion. A trial court should grant a jury trial, even if the jury fee is paid late, if (1) to grant the jury trial would not cause injury to the adverse party through postponement of the trial and (2) to grant the jury trial would not disrupt the court's docket or interfere with the handling of the Court's business. *Childs v. Reunion Bank,* 587 S.W.2d 466, 471 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Henderson v. Youngblood,* 512 S.W.2d 35, 37 (Tex.Civ.App.—El Paso 1974, no writ). Attorney for appellant testified that he placed a jury demand and fee in the mail to the District Clerk on May 24, 1982. However, the demand was not marked filed by the District Clerk's office until June 1, 1982, seven days prior to the trial date. The fact that appellant's attorney may have mailed the demand and fee more than ten days prior to the trial date is immaterial. Rule 216 requires the demand and fee to be deposited with the clerk more than ten days before the trial date. The only evidence of the date of deposit is the date marked on the demand letter by the clerk's office. Therefore the presumption of filing within a reasonable time does not arise in this case. Appellant has failed to show an abuse of discretion by the trial court in denying his request since there is nothing in the record to show any of the circumstances of the denial except that the request was denied, that appellee's counsel objected to the request because he was not prepared for presentation of his case before a jury, and that the request did not comply with Rule 216. *Childs v. Reunion Bank,* 512 S.W.2d at 471. Appellant's first point of error is overruled.

■ Appellant's points of error two through five contend that the trial court erred in entering judgment against him because the evidence in this cause is both legally and factually insufficient to support the trial court's finding that the appellant signed the guaranty contained in the credit application from Norwest to appellee. A signature of appellant's name is present on the credit application. Appellant's liability for Norwest Fabricating Company's indebtedness to appellee is therefore contingent on there being probative evidence of the genuineness of the signature. In this case there is no eyewitness testimony of the appellant signing the guaranty. In its determination of the genuineness of the signature the trial court was required to rely on the testimony of John Quire, who testified he knew the signature of the appellant and that the signature was genuine. It is well established that the genuineness of a signature may be proved by testimony of one who is familiar with the handwriting of the person whose signature is in dispute. *Allen v. Hoxey's Admr.,* 37 Tex. 320; *Chaytor v. Brunswick-Balke-Collender Co.,* 71 Tex. 588, 10 S.W. 250; *Askins v. Sparks,* 56 S.W.2d 279 (Tex.Civ.App.—Beaumont 1933 writ ref'd).

Appellee also offered comparison evidence under article 3737b of the Texas Revised Civil Statutes Annotated. However this evidence does not strengthen appellee's case for genuineness because appellee used only the testimony of John Quire to establish the genuineness of the comparison evidence. If the trial court had reason to doubt Quire's testimony concerning the signature on the guaranty, it would also have reason to doubt his testimony concerning the comparison evidence.

■ Essentially the evidence of the genuineness of the appellant's signature on the guaranty consisted of the testimony of John Quire, who was vice-president of Norwest Fabricating Company at the same time appellant was acting as president. John Quire testified that he signed the guaranty. He testified that he was familiar with appellant's signature and that he acquired this familiarity from witnessing appellant sign checks and bank papers. He further testified that he recognized appel-

lant's signature on the guaranty. He went on to describe characteristics of the appellant's signature which were present in the signature appearing on the guaranty. The only contrary evidence to genuineness was appellant's testimony that he did not sign the guaranty.

We must overrule appellant's contention that there is no evidence or in the alternative that there is insufficient evidence of the genuineness of appellant's signature on the guaranty. The testimony of John Quire constitutes sufficient evidence to support the trial court's finding that appellant signed the guaranty. The trial court was presented with competent evidence both for and against the genuineness of the signature. The trial court's finding was therefore based on its evaluation of the credibility of the appellant and John Quire as witnesses. Questions of credibility are within the province of the fact finder and will not be resolved on appeal. *Lane v. Brown,* 312 S.W.2d 735 (Tex.Civ.App.— Dallas 1958, writ ref'd n.r.e.). Appellant's points of error two through five are overruled.

Appellant's final point of error is that the trial court erred in rendering judgment against appellant for $10,962.72 because the guaranty should be interpreted as limiting the guarantor's liability to $2,500. The guaranty which the trial court found to have been executed by appellant states in full:

> In consideration of credit being extended to the above named firm, I personally guarantee all indebtedness hereunder. I further agree that this guaranty is an absolute, complete, and continuing one and no notice of the indebtedness or any extension of credit already or hereafter contracted by or extended need be given. The terms may be rearranged, extended, and/or renewed without notice to me. That ᵀ will, within five days from date of notice that the account is past due, pay the amount due.

(Signed)  Norris Lenamond      (Signed)  John Quire
————————————      ————————————
President                            Vice-President

Beneath the signature on the guaranty separated by a dark line the application states: 1) Date Approved 8/14/78 and 2) Limit $2,500. Appellant asserts that the language, "I personally guarantee all indebtedness hereunder," limits the guaranty to the $2,500 credit limit approved, because that is the dollar amount which appears beneath the guaranty.

We reject appellant's interpretation of the guaranty for two reasons. First, it is clear that the guarantors did not intend to limit their liability to $2,500 under the guaranty because the credit application which contains the guaranty requests credit for $10,000 on August 13, 1978. Thus the guarantors expressed a willingness to guarantee indebtedness up to at least $10,-000. The $2,500 credit limit was approved by the appellee after the credit application was made and did not constitute part of the guaranty agreement. We believe that the "indebtedness hereunder" language referred to all credit obtained through the credit application rather than to credit limitations imposed by the appellee which were subject to change. In this case the appellee later revoked the credit limit by extending Norwest Fabricating Company credit beyond the initial $2,500 credit limit. Second, the guaranty expressly states no notice of indebtedness or extension of credit hereafter contracted or extended need be given to the guarantors. Generally, if parties to a loan materially alter the terms, the guarantors will be discharged unless they are given notice and consent to the change in terms. *Straus Frank Co. v. Hughes,* 138 Tex. 50, 156 S.W.2d 519 (1941). The guarantors in this case have impliedly agreed that alteration would not result in discharge by agreeing that the terms of the debt may be altered without giving notice to them. Thus the guarantors expressed their intent to guarantee future extensions of credit through the waiver of notice provision. Any other interpretation of the waiver of notice provision would render this provision surplusage. It was obviously intended to prevent discharge of the guarantors if additional credit was extended.

Appellant's six points of error are overruled. We affirm the judgment of the trial court in all respects.