**MISSOURI FARMERS ASSOCIATION, INC., a Missouri Corporation, Plaintiff-Respondent,**

v.

**Orville COLEMAN and Peggy Coleman, Defendants-Appellants.**

No. 13289.

Missouri Court of Appeals, Southern District.

Aug. 20, 1984.

Motion for Rehearing or to Transfer Denied on Sept. 11, 1984.

**856**

Orville and Peggy Coleman, pro se.

JoAnne Spears Jackson, West Plains, for plaintiff-respondent.

FLANIGAN, Judge.

Plaintiff Missouri Farmers Association, Inc., a corporation, brought this action against defendants Orville Coleman and Peggy Coleman for the unpaid balance of an account arising out of the sale of merchandise, primarily hog feed, by plaintiff to defendant Orville Coleman. The trial court, sitting without a jury, found the issues in favor of plaintiff and awarded judgment of $10,197.20, plus interest and attorney's fees, against both defendants. Defendants appeal.

At the trial both defendants were represented by the same attorney. Defendant Peggy Coleman testified at the trial but her co-defendant Orville Coleman, from whom she was divorced in 1980, did not appear. On this appeal the two defendants appear pro se.

Defendants' first point is that the evidence is insufficient to support the judgment against defendant Orville Coleman for the reason that plaintiff "offered no evidence that any and all of the merchandise charged to defendant Orville Coleman was delivered to and received by him."

The dealings between the parties commenced in 1977 and continued until 1981. At the trial plaintiff introduced, as Exhibit 3, numerous sales tickets showing the quantity, description, price, and amount of merchandise purchased from it by defendant Orville Coleman, together with the date of each transaction. Plaintiff's Exhibit 4 consisted of monthly statements, beginning in July 1977 and ending in October 1981, which it had mailed to Orville Coleman and which showed the various transactions in the account. When the exhibits were offered defense counsel stated that he "had no objection to these insofar as they pertain to Orville Coleman."

Essentially the argument of defendant Orville Coleman is that plaintiff's proof was deficient because several of the tickets in Exhibit 3 were not signed by Orville Coleman or by anyone on his behalf. Many of the tickets were signed by him. Peggy Coleman signed one ticket in December 1980.

During his opening statement defense counsel said, "With regard to Orville Cole-

man, unfortunately he did not keep records of his purchases and so on. He's gone over this and states he really doesn't know from his own records whether he got all these items or not."

Cecil Quinn, manager of plaintiff's "Exchange," testified that both exhibits were prepared in the regular course of business and accurately showed merchandise delivered to the Coleman farm. Quinn testified that when the customer ordered merchandise by telephone or in person, tickets reflecting the order were made "on the same date the merchandise is loaded on the truck and delivery is made." Quinn also testified that "if the customer is in the store at the time the ticket is made the customer signs the ticket, but when the merchandise is delivered to the farm the customer very seldom signs the ticket.... They will do so if they are present."

Both exhibits reflected payments made from time to time on the account. Defendant Orville Coleman was given credit for those payments, several of which were made in 1981, after monthly statements had been mailed to him for more than four years.

■ The foregoing evidence, unrefuted by any testimony from Orville Coleman, was sufficient to justify the implied finding of the trial court that the merchandise shown on the two exhibits was delivered to Orville Coleman. The trial court was entitled to believe plaintiff's explanation for the absence of Orville Coleman's signature on some of the tickets in Exhibit 3. Defendants' first point has no merit.

Defendants' second point is that the evidence is insufficient to support the judgment against defendant Peggy Coleman for the reasons discussed and rejected under defendants' first point and for the additional reason that Peggy Coleman's liability, in any event, was limited to $500 because defendants' "Credit Application" was in the stated amount of $500.

The petition alleged that Peggy Coleman was liable under a written guaranty by which she (and Orville Coleman) had guaranteed the payment of Orville Coleman's account with plaintiff.

Near the outset of his dealings with plaintiff, Orville Coleman made out a "Credit Application" in which he listed certain information concerning himself and Peggy Coleman, to whom he was then married. The application recited: "I hereby apply for credit in the amount of $500." The Credit Application was submitted to plaintiff, along with a written "Credit Agreement" which was signed by Orville Coleman and Peggy Coleman on August 10, 1977.

The Credit Agreement included the following (emphasis added):

1. Orville Coleman and Peggy Coleman, as guarantors, "guarantee payment to [plaintiff] of *any* and *all* loans, accounts, or advances made to or for the use, account or benefit of [Orville Coleman], whether evidenced by bills payable, open account ... or in any other manner whatsoever.... Notice of the creation of *all* indebtedness, renewals and extensions thereof, demand for payment, ... notice of ... non-payment, including acceptance of this guarantee, are waived ... upon non-payment at maturity [plaintiff] shall have the right to proceed directly against [the guarantors], jointly or severally, for the collection of *all* or *any part* of said indebtedness.

2. ... On monthly balance charges *in excess of $500*, there will be added a finance charge (method of calculation set forth).

\* \* \* \* \* \*

4. [Guarantors] agree to pay an attorney's fee (amount stipulated).

\* \* \* \* \* \*

6. ... Nothing in this agreement shall require or compel [plaintiff] to extend credit to [Orville Coleman] or require or compel [Orville Coleman] to obtain credit from [plaintiff].

7. ... This is a continuing agreement, applying to all existing and future transactions between the parties until revoked in writing, delivered to [plaintiff], but such revocation shall not affect [the guaran-

tors'] liability on any obligation contracted prior to receipt of written notice of revocation.

In *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo. App.1977), this court said:

"A guaranty is a species of contract ... to be construed as other contracts.... It is a collateral agreement for another's undertaking and is an independent contract which imposes responsibilities different from those imposed in an agreement to which it is collateral.... While it is held that contemporaneous agreements dealing with the same subject matter may be construed together as an aid in ascertaining the intention of the parties, this does not mean that those agreements constitute a single contract ... for the liability of the guarantor remains primarily dependent upon the guaranty contract. It is the guaranty agreement which contains the express conditions on the guarantor's liability and which defines the obligations and rights of both the guarantor and guarantee.... Any ambiguity in a guaranty contract should arise in the first instance from the guaranty agreement itself and neither a court nor the parties will be permitted to create an ambiguity where none exists...." (Authorities omitted.)

■ The Credit Agreement, which Peggy Coleman admittedly executed, guaranteed the payment of "any and all" loans and accounts made to Orville Coleman by plaintiff. Plaintiff had the right to proceed against the two guarantors, jointly or severally, for the collection of all the indebtedness together with stipulated finance charges and attorney's fees. The mere fact that Orville Coleman's Credit Application sought only $500 did not restrict the liability of the guarantors to that amount in view of the breadth of the language of the guaranty itself. *Bay Oil Co. v. Vilas*,

237 Wis. 603, 296 N.W. 595 (1941). See also *Fertig v. Bartles*, 78 F. 866 (1897).

In *Bay Oil Co.*, defendant executed a guaranty to pay "all lawful charges for merchandise" sold and delivered by Bay Oil Co. to one Clayton. "At or prior to the date of the guaranty" Bay Oil Co. entered into a contract with Clayton agreeing to extend to him credit "not to exceed $1,000." The oil company brought suit against defendant to recover $1,608, the balance of Clayton's unpaid account which at one time amounted to $4,300. The Supreme Court of Wisconsin held that the trial court erred in limiting the plaintiff's recovery to $1,000 and that plaintiff was entitled to recover $1,608 from the guarantor. The court rejected the alternative contentions of the guarantor that the extension of more than $1,000 credit to Clayton relieved the guarantor of all liability or that the guarantor's liability was limited, in any event, to $1,000. The court pointed out that the limitation on credit, contained in the Bay Oil Co.-Clayton agreement, was not for the benefit of the guarantor but for that of Bay Oil Co. and that the limitation did not "modify or condition the separate contract of guaranty which contains no specific limitation or condition."

*Bay Oil Co.* has encyclopedic support.[1] Defendants' second point has no merit.

■ Defendants' third point is that the trial court erred in permitting the plaintiff to amend the petition on the day of the trial. The amendment, to which defense counsel made no objection, consisted of changing the word "defendant" to "defendants" in paragraph 4 of the six-paragraph petition. In other paragraphs the plural had been used. This correction of a typographical error did not change the tenor of the petition and the trial court properly granted leave for the making of the correction. Rule 55.33(a), V.A.M.R.

1. "Where the contract between the guarantee and principal debtor limits the obligation of the former to extend credit to the latter up to a specified amount, such limitation does not modify or condition the contract by which the guarantor agrees to guarantee the payment of all credits extended to the debtor, and the liability of the guarantor is not limited to such amount or discharged by the extension of more credit than the amount so specified." 38 C.J.S. Guaranty § 56, p. 1211.

Defendants' fourth point is that the trial court erred in finding defendant Peggy Coleman liable on the account for the reason that when the defendants were divorced in 1980 "it was the understanding of the defendants that defendant Orville Coleman was liable for all debts arising from the maintenance of the hogs." A sufficient answer to this contention is that there is nothing in the record to show that plaintiff had any knowledge of, or agreed to be bound by, any such "understanding of the defendants." There is no showing that plaintiff had any knowledge of the divorce. Neither defendant made any effort to exercise the right, under the Credit Agreement, to revoke that agreement, and plaintiff's rights against the defendants were not dependent upon the existence or continuance of the marriage. Defendants' fourth point has no merit.

Defendants' fifth point is that the trial court committed plain error "when it allowed the trial to proceed and the judgment to stand when it was apparent that counsel for the defendants was acting in collusion with the attorney for the plaintiff [and] knowing counsel for defendants was proceeding as an agent for both defendants knowing a conflict of interest existed."

There is nothing in the record to indicate or even suggest collusion between defendants' trial counsel and counsel for plaintiff.

With regard to any conflict of interest which may have arisen by reason of the same attorney representing both defendants, the record demonstrates that defendant Orville Coleman had no defense to the petition. The only purported defense which defendant Peggy Coleman had, different from that of her codefendant, has been discussed under the second point and it was presented to the trial court. Both defendants were aware that they were using the same lawyer although they were no longer married to each other. Neither defendant attempts to point out what the trial attorney did which he should not have done or what he failed to do which he should have done if he had represented only one of them. Plaintiff, of course, had nothing to do with defendants' selection of counsel. The judgment does not purport to adjudicate any claim which either defendant may have had, or may still have, against the other or against their attorney. Defendants themselves apparently feel they have a mutuality of interests because they have filed a joint pro se brief in this court. That brief shows the same address for both defendants. Defendants' fifth point has no merit. See *Southern Valley Grain Dealers Ass'n v. Board of County Commissioners*, 257 N.W.2d 425, 431–32[8] (N.D. 1977).

The judgment is affirmed.

TITUS, P.J., and GREENE, J., concur.