Dewey M. CLARK, Appellant,

v.

WALKER–KURTH LUMBER COMPANY, Appellee.

No. 01–84–0696–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 14, 1985.

Rehearing Denied April 18, 1985.

J. James Luck, Houston, for appellant.

Margaret Garner Mirabel, Eric B. Zwiebel, Mirabel & Associates, Houston, for appellee.

Before DUGGAN, HOYT and WARREN, JJ.

## OPINION

WARREN, Justice.

This is an appeal from a judgment for the creditor in a suit tried without a jury on a guaranty agreement. Walker-Kurth Lumber Company (Walker-Kurth) sued appellant in his capacity as guarantor for the unpaid debts at Clarco, Inc., a Texas corporation. Appellant brings seven points of error, alleging: (1) that the trial court erred in holding him liable under the guaranty agreement beyond the sum guaranteed; (2) that the terms of the guaranty agreement were not complied with resulting in a failure of consideration of the guaranty and his discharge as guarantor; (3) that the trial court abused its discretion in refusing to allow his trial amendments; (4) that the trial court erred in admitting certain business records into evidence; and (5) that the trial court erred in awarding prejudgment and postjudgment interest at a rate of eighteen percent per annum.

In 1976, appellant formed Clarco, Inc. to conduct international sales of oilfield equipment. Clarco, Inc. expanded its operations in 1978 to include export forwarding and crating. On September 6, 1978, Clarco, Inc. submitted a credit application to Walker-Kurth to finance the acquisition of supplies for the crating operations. The application listed appellant and two employees as authorized buyers. Additionally, the instrument stated that in the event of delinquency in the account, the debtor agreed to "pay interest at the full legal rate."

On the same day appellant executed an "Individual Personal Guaranty" stating:

> I, Dewey M. Clark ... for and in consideration of your extending credit at my request to Clarco, Inc. (hereinafter referred to as the "Company") ... personally guarantee to you the payment ... of any obligation of the Company and I hereby agree to bind myself to pay you on demand any sum which may become due to you by the Company whenever the Company shall fail to pay the same. It is understood that this guaranty shall be a continuing and irrevocable guaranty and indemnity for such indebtedness of the Company. I do hereby waive notice of default, non-payment and notice thereof and consent to my modification or renewal of the credit agreement hereby guaranteed.
>
> /s/ Dewey M. Clark

At some time after appellant submitted the credit application and personal guaranty to Walker-Kurth, a notation was made in the margin of the credit application: "OK $1000 limit/GDJ." George D. Jones was credit manager of Walker-Kurth in September of 1978.

From 1978 to 1982, Clarco, Inc. continued to use lumber for crating. Purchases were made on the Clarco, Inc. account at Walker-Kurth and by February 19, 1982, the account had an unpaid balance of $26,138.57. Also during this period, several changes were made in Clarco, Inc.'s management including appellant's resignation and subsequent reappointment as president, and the formation of a separate corporation for equipment crating and forwarding. In May 1982, Clarco, Inc. filed bankruptcy in the United States Bankruptcy Court for the Southern District of Texas.

Appellant's primary contention on appeal is that the trial court erred, as a matter of law, in expanding his obligation beyond the $1000 credit limit added to the credit application by Walker-Kurth's credit manager. In related points of error, appellant argues that appellee breached the terms of the credit agreement by allowing purchases in excess of the credit limit and without the authorization of either appellant or another "authorized buyer." Appellant concludes that the breach of the credit agreement resulted in a failure of consideration of the guaranty.

The issues before this court turn primarily on the interpretation of the credit contract and appellant's guaranty. In particular, the court must reconcile appellant's guaranty of "any obligation" of Clarco, Inc. and his claim that the credit limit notation was intended to limit his liability as guarantor.

In analyzing the agreements in this case we should note preliminarily that the rules of interpretation of guaranty agreements are well established. Where uncertainty exists as to the meaning of a contract of guaranty, and where two *reasonable* constructions may be made, the reviewing court will apply the construction more favorable to the guarantor. The rule of *strictissimi juris* is applied to refrain from extending the guarantor's obligation by implication beyond the written terms of the agreement. *Coker v. Coker,* 650 S.W.2d 391, 394 n. 1 (Tex.1983); *Reece v. First State Bank of Denton,* 566 S.W.2d

296, 297 (Tex.1978); *McKnight v. Virginia Mirror Company,* 463 S.W.2d 428, 430 (Tex.1971); *Commerce Savings Association of Brazoria County v. GGE Management Co.,* 539 S.W.2d 71, 77–78 (Tex.Civ.App.—Houston [1st Dist.]), *modified and aff'd per curiam,* 543 S.W.2d 862 (Tex. 1976); *Southwest Savings Association v. Dunagan,* 392 S.W.2d 761, 766–67 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.).

Similar claims to appellant's were raised and rejected in *Lenamond v. North Shore Supply Company,* 667 S.W.2d 283 (Tex.App.—Houston [14th Dist.] 1984, no writ). In *Lenamond,* the appellant executed a guaranty agreement to enable his company to purchase materials on open account from the appellee. Lenamond, the guarantor, argued that a handwritten credit limit of $2,500 limited his personal liability to that amount. In rejecting the argument the court held:

First, it is clear that the guarantors did not intend to limit their liability to $2,500 under the guaranty because the credit application which contains the guaranty requests credit for $10,000 on August 13, 1978. Thus the guarantors expressed a willingness to guarantee indebtedness up to at least $10,000. The $2,500 credit limit was approved by the appellee after the credit application was made and did not constitute part of the guaranty agreement. We believe that the "indebtedness hereunder" language referred to all credit obtained through the credit application rather than to credit limitations imposed by the appellee which were subject to change. In this case the appellee later revoked the credit limit by extending Norwest Fabricating Company credit beyond the initial $2,500 credit limit. Second, the guaranty expressly states no notice of indebtedness or extension of credit hereafter contracted or extended need be given to the guarantors. Generally, if parties to a loan materially alter the terms, the guarantors will be discharged unless they are given notice and consent to the change in terms. *Straus-Frank Co. v. Hughes,* 138 Tex. 50, 156

S.W.2d 519 (1941). The guarantors in this case have impliedly agreed that alteration would not result in discharge by agreeing that the terms of the debt may be altered without giving notice to them. *Lenamond,* 667 S.W.2d at 286 (emphasis added). Appellant contends that the *Lenamond* case is distinguishable because, in the case at bar, there is no evidence of appellant's intent to guaranty the indebtedness of the corporation beyond the written credit limitation. He also argues that the *Lenamond* court ignored the application of section 2.207 of the Business and Commerce Code by holding that the credit limit was not part of the guaranty.

■ On our facts it would be unreasonable to conclude that the credit limit of $1000 is an enforceable limit on appellant's liability as guarantor. First, it is clear that appellant, the guarantor, did not intend to limit his liability to $1000. Nothing in the record demonstrates that appellant requested any limitation on his personal liability. To the contrary, appellant admits signing the guaranty *before* the addition of the credit limit notation. Moreover, the clear language of the guaranty states that he guaranteed payment of "any obligation" of Clarco, Inc. *Lenamond,* 667 S.W.2d at 286.

■ Second, appellant's argument that the $1000 limit became part of the *guaranty* agreement under the rules of section 2.207 is without merit. The $1000 limit was a limit on *credit* to be extended Clarco, Inc., and clearly was not intended to limit the guarantor's *liability.* Where the contract between the creditor and principal debtor limits the obligation of the former to extend credit to the latter up to a specified amount, such limitation does not condition the contract by which the guarantor agrees to guaranty the payment of all credit extended to the debtor. Moreover, the liability of the guarantor is not limited to the amount of credit specified or discharged by the extension of more credit than the amount specified. *See Missouri Farmers Association v. Coleman,* 676 S.W.2d 855 (Mo.App.1984); *Bay Oil Co. v.*

*Vilas,* 237 Wis. 603, 296 N.W. 595 (1941); 38 C.J.S. Guaranty § 356, p. 1211.

■ Third, appellant is incorrect in asserting that the terms of the credit agreement were breached and he was discharged as guarantor when appellee allowed purchases to be made by persons other than the "authorized buyers" listed on the credit agreement. Appellant agreed to remain liable for *any* debts incurred by Clarco, Inc. in purchasing goods from Walker-Kurth. Appellant's guaranty was thus continuing and unconditional. Sufficient evidence was introduced at trial to establish the debt of Clarco, Inc. to Walker-Kurth. Moreover, in concluding that Walker-Kurth did not breach the credit agreement by allowing purchases in excess of $1000 or by persons other than the authorized buyers, we necessarily conclude that there was no failure of consideration of the guaranty agreement.

We are not extending appellant's obligation or faltering in our application of *strictissimi juris* since appellant intended his guaranty to be unconditional. Appellant is thus liable for the entire indebtedness of Clarco, Inc. to Walker-Kurth.

Appellant's first, second, third, and fifth points of error are overruled.

Appellant next contends that the trial court erred in refusing to allow him to amend his pleadings at trial. Appellant's trial amendments asserted the affirmative defenses of Walker-Kurth's failure to fulfill all conditions precedent and material modification of "the agreement."

■ Rule 66 of the Texas Rules of Civil Procedure states in pertinent part:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading ... the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense on the merits.

Tex.R.Civ.P. 66. Our courts favor a liberal construction of the rule and uniformly hold that trial amendments should be allowed whenever the interests of justice are served. *See Putter v. Anderson,* 601 S.W.2d 73 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). An appellate court will not disturb the decision of a trial court to allow or refuse a trial amendment, however, unless such decision is a clear abuse of discretion. *Schrader v. Artco Bell Corp.,* 579 S.W.2d 534 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). The reviewing court will determine whether the trial court abused its discretion by examining the entire record. *Alamo Ambulance Service, Inc. v. Moulton,* 402 S.W.2d 200, 205 (Tex.Civ.App.— San Antonio 1966), *aff'd and rev'd in part,* 414 S.W.2d 444 (Tex.1967).

Here, the record shows that Walker-Kurth received notice before trial that appellant planned to amend his pleadings. When appellant's counsel exceeded the bounds of the pleadings during cross examination, appellee's counsel objected to the questioning. At that point, appellant's counsel offered his first trial amendment. After lengthy argument, the court took the matter under submission and adjourned. The following day, the court overruled appellant's motion to amend the pleadings. Prior to presentation of his case-in-chief, appellant moved to have certain amendments made, again alleging failure of the conditions precedent of "the agreement." The amendments were again rejected.

■ Appellee pointed out at trial and urges on appeal that local rules for the district courts of Harris County prohibit amending pleadings after a cause has been certified for trial. *See* Harris Co.Dist. Civ.R. 3c(4) (1983). This rule must, however, be read in conjunction with rule 166(g) of the Texas Rules of Civil Procedure which allows modification of pretrial orders to prevent manifest injustice.

■ The issue on appeal is therefore whether the trial court abused its discretion by precluding appellant from asserting affirmative defenses and thus preventing consideration of the merits of the case at bar. We conclude that the trial court did not abuse its discretion in refusing to allow amendments to pleadings because evidence sufficiently demonstrated that the corporation owed the debt and the "presentation of the merits" would not have been subserved by the allowance of amendments. *See Durham v. Uvalde Rock Asphalt Company,* 599 S.W.2d 866, 870 (Tex.Civ.App.— San Antonio 1980, no writ); *Harberson v. Lawhon,* 518 S.W.2d 840, 841 (Tex.Civ.App. —Fort Worth 1975, no writ). Moreover, even if the trial court committed error in refusing the amendment, that error would not amount to such a denial of appellant's rights that it would be considered reasonably calculated to cause and probably caused the rendition of an improper judgment in the case. *See* Tex.R.Civ.P. 434; *Knolle v. Hunt,* 551 S.W.2d 755, 763 (Tex. Civ.App.—Tyler 1977, writ ref'd n.r.e.).

Appellant's fourth point of error is overruled.

Appellant contends in his sixth point of error that the trial court erred in admitting into evidence plaintiff's exhibit 7–A containing a billing statement and invoices as proof of the indebtedness of Clarco, Inc. Appellant argues that appellee did not establish the foundation for the introduction of business records under rule 803(6) of the Texas Rules of Evidence.

At trial, Robert Fountain, credit manager of Walker-Kurth, described his company's customary practices in documenting sales and in billing customers. Mr. Fountain was not employed by Walker-Kurth at the time of the creation of the subject documents but was familiar with and testified to the usual method of invoice generation: a salesperson receives a customer's order, feeds the order into a computer terminal, prints out a five-part typed invoice, and gives the invoice to the shipping department for collection and delivery of the goods. The customer then signs the invoice, either upon delivery by Walker-Kurth or when the customer leaves the lumber yard transporting the goods himself. Mr. Fountain also testified that once the invoices were generated, and after re-

ceipt of the goods, the invoices were torn apart and copies were sent to various corporate departments at Walker-Kurth. Mr. Fountain did not testify as to the procedure for creating the statement, or summary of unpaid invoices, but appellant did not separately attack the admissibility of the statement at trial. Counsel for appellant objected generally to the introduction of exhibit 7–A on the ground that "the personal knowledge requisite" of rule 803(6) was not demonstrated.

Rule 803(6) provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Tex.R.Evid. 803(6).

Appellant contends that Fountain's *general* description of the procedures for creating the records failed to establish that these *particular* invoices were generated at or about the time of the sale by a person with knowledge of the sale. Appellant also contends that the statement portion of exhibit 7–A constituted a "summary" of business records and that appellee failed to lay the proper predicate for introduction of a summary.

■ First, appellant cannot enlarge his complaint on appeal to include the arguments that the invoices were not generated at or near the time of the transaction and that appellee failed to lay the proper predicate for introduction of a summary of business records. *See Pfeffer v. Southern Tex-*

*as Laborers' Pension Trust Fund,* 679 S.W.2d 691 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Roylex, Inc. v. Arco Community Developers, Inc.,* 559 S.W.2d 833, 837 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ). His complaint regarding the admissibility of the records related to the personal knowledge requirement of the rule.

Second, Fountain's testimony sufficiently established that invoices are prepared by salesmen with knowledge of the transaction, that the supplies cannot be collected for pick-up or delivery without an invoice specifying the materials needed, and that each invoice was signed by the party receiving the goods.

■ The predicate for admissibility under rule 803(6) is sufficiently established if it is demonstrated that the documents are records that are generated pursuant to a course of regularly conducted business activity and that the records are, as a practical matter, always created by or from information transmitted by a person with knowledge, at or near the time of the event. The trial judge shall determine from all the evidence offered whether the personal knowledge required by rule 803(6) is present. *La Freniere v. Fitzgerald,* 669 S.W.2d 117, 119 (Tex.1984); *Marquis Construction Co., Inc. v. Johnson Masonry,* 665 S.W.2d 514, 516 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). In reviewing the trial court's ruling, our task is only to determine whether there was a sufficient evidentiary basis for the court's determination. *Marquis Construction,* 665 S.W.2d at 516. We conclude that Mr. Fountain's testimony was sufficient to establish the predicate for the admission of the invoices.

■ Finally, we conclude that the billing statement was erroneously admitted since Mr. Fountain gave no testimony as to how billing statements are created. Any error in the admission of the statement, however, was harmless since there was other competent evidence in the record to support the judgment. Tex.R.Civ.P. 434; *Mandril v. Kasishke,* 620 S.W.2d 238, 249

(Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

Appellant's sixth point of error is overruled.

█ Appellant contends in his final point of error that the trial court erred in awarding Walker-Kurth prejudgment and postjudgment interest at the rate of eighteen percent per annum. The credit agreement contained the following provision:

> I/we agree to pay interest at the *full legal rate* and any reasonable collection or legal fee incurred by Walker-Kurth Lumber Company to collect any delinquent amount.

Appellant argues that the following statute applies:

> When no specific rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all amounts and contracts ascertaining a sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1967). Appellee contends that the term "full legal rate" indicates the parties' intent to have prejudgment and postjudgment interest accrue at eighteen percent per annum, as specified in the following provision:

> All judgments of the courts of this State based on a contract that provides for a *specific rate of interest* earn interest at a rate equal to the lesser of:
> (1) the rate specified in the contract
> (2) 18 percent.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp.1983) (emphasis added).

We hold that both prejudgment and postjudgment interest should have been awarded at the rate of 10% per annum.

The phrase "full legal rate," contained in the 1978 credit agreement is specific enough to show an agreement under article 5069–1.04 (1967), the law then in effect, which provided that parties may agree to any rate of interest not exceeding 10% per annum on the amount of the contract. Further, the phrase is specific enough to show that the parties intended that appellant pay interest on delinquent accounts at the highest rate allowable by law on the date of the agreement. Therefore, the judgment should have awarded prejudgment interest at the rate of 10% per annum.

Since we have concluded that there was a valid contract regarding interest, the rate of postjudgment interest is governed by article 5069–1.05 which allows interest at the lesser of the rate specified in the contract or 18 per cent per annum. Although no specific numerical rate was specified in the contract, our determination that the parties intended that the interest rate on delinquent accounts would be the highest rate allowable on the date of the contract requires that postjudgment interest of 10% be awarded.

We acknowledge and respect the holding in *Jetty, Inc. v. Hall-McGuff Architects*, 595 S.W.2d 918 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ), but we are of the opinion that the term "full legal rate" used in the contract in our case is more definite and ascertainable than the term "legal rate" used in the *Jetty* contract.

The judgment is reformed to allow appellant prejudgment and postjudgment interest at the rate of 10%; in all other respects, the judgment is affirmed.