Opinion issued February 17, 2005







     




In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01152-CV




ANTHONY JAMES ROGERS, APPELLANT

V.

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
APPELLEE







On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 96-47168A




O P I N I O N

          This is an appeal of a jury’s finding that Anthony James Rogers’s parental
rights to his children, A.J.R., L.A.J., S.C.R., and P.L.R., should be terminated. In
seven issues presented for review, Rogers contends (1) the statute providing for the
trial court to determine whether an appeal from a termination of parental rights is
frivolous is unconstitutional; (2) the trial court erred by (a) overruling his objections
to the jury charge, (b) admitting into evidence the entire Department of Family &
Protective Services (DFPS) case file, (c) allowing the caseworker to testify from
inadmissible records, (d) allowing the caseworker to testify as an expert witness, and
(e) allowing the child advocate supervisor to testify; and (3) the evidence was legally
and factually insufficient to support the jury’s finding. We affirm.
Factual Background
          DFPS caseworkers had been involved with Rogers’s family since 1993. In
1995, caseworkers investigated and validated a report of physical abuse. After an
emergency hearing, the trial court granted DFPS temporary managing conservatorship
of L.A.J., A.J.R., and two other boys from the mother’s previous marriage who are
not parties to this appeal.


 Shortly thereafter, DFPS sued to terminate both parents’
relationships to their children, and it placed A.L.R., L.A.J., and S.C.R. in foster care. 
Initial reports indicated that the two older boys (ages five and six), who are not
subject to this appeal, expressed fear of both their mother and their step-father,
Rogers. The other children, those who are the subject of this appeal, were too young
to be verbal. About a year later, P.L.R., was born. 
          In 1998, the two oldest boys were permanently reunified with their biological
father, but the three other children remained in foster care until the beginning of
1999. In February 1999, L.A.J. and A.J.R. were returned to their biological mother. 
That same month, Rogers was released from prison (where he had been serving time
because his probation in an offense unrelated to this case had been revoked), returned
to Houston, and began participating with the rest of the family in intensive weekly
reunification sessions. At DFPS’s suggestion, Rogers did not immediately move back
into the family’s home. Meanwhile, bonding therapy began between the parents and
S.C.R. S.C.R. was returned to the home in May 1999. Two months later, Rogers
moved back in.
          A DFPS caseworker continued to visit the home regularly. On February 4,
2000, a caseworker came to the home to see S.C.R., but Rogers told the caseworker
S.C.R. was not at home. Two days later, the caseworker returned. The mother had
been ill, and S.C.R. was lying on her bed with a bandana around her head. When the
caseworker felt the child’s head, she discovered that it was “very soft.” She called
9-1-1, and S.C.R. was admitted to the hospital in critical condition. She had a black
eye, swollen head, lacerations and a possible bite mark on her face and lips, an acute
burn to her forehead, bruising to her arms and legs, a fractured wrist, bleeding in her
skull and brain, and hundreds of healed scars. The doctor noted that some of the
injuries were remote, and some very recent. He further noted that the child would
have reacted in pain if the recent injuries had been touched, and that the injuries were
immediately visible. 
          Although the parents contended that S.C.R. had hurt herself when she fell out
of a bunk bed, DFPS determined that both the mother and Rogers physically abused
the child. S.C.R., L.A.J., and A.J.R. were removed from the home and placed with
their respective foster parents, who had cared for them earlier. The agency obtained
emergency temporary managing conservatorship of the youngest child, P.L.R., and
placed her in the same foster home in which L.A.J. and A.J.R. were living. Both
Rogers and his wife were convicted of the offense of injury to a child and are
currently serving time in prison. DFPS’s suit to terminate Rogers and his wife’s
parental rights to the four children resulted in a finding by the jury that termination
was in the children’s best interests. From that finding, Rogers appeals.
Constitutional Rights
          In his first issue, Rogers contends that the statute providing for the trial court
to determine whether an appeal from a termination of parental rights is frivolous is
unconstitutional because it deprives him of a full appellate review. We decline to
address this issue because this Court is, in fact, conducting a full appellate review of
the termination proceedings, not a review of the trial court’s determination that the
appeal was frivolous. The issue is therefore moot; accordingly, we will not issue an
advisory opinion. See Texas Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440,
444 (Tex. 1993).
          We do not reach the first issue.
Jury Charge Error
          In his second issue, Rogers contends the charge submitted to the jury was
erroneous, resulting in an improper verdict. The State contends Rogers did not
properly preserve this alleged error for review because he did not offer a substantially
correct charge of his own


 and because his objections on appeal do not comport with
his objection at trial. At trial, Rogers objected to surplusage in the charge and
contended that his version was a more correct one, without specifying his objections. 
On appeal, he argues that the charge did not conform to the pleadings and evidence
because there was no evidence of many of the factors listed in regard to evaluation
of the children’s best interest. Assuming, without deciding, that Rogers preserved his
challenges to the jury charge, he cannot prevail.
          The jury charge submitted included the following instructions:
Some, but not all, factors to be considered in determining the “best
interest” of the Child are:
 
1.the desires of the child;
 
2.the emotional and physical needs of the child now and in the
future;
 
3.any emotional and physical danger to the child now and in the
future;
 
4. the parenting ability of the individuals seeking custody;
 
5.the programs available to assist those individuals to promote the
best interest of the child;
 
6.the plans for the child by those individuals seeking custody;
 
7.the stability of the home;
 
8.the acts or omissions of the parent that may indicate that the
existing parent-child relationship is not a proper one; and
 
9.any excuse for the acts or omissions of the parents;
 
10.the child’s age and physical and mental vulnerabilities;
 
11.the frequency and nature of out-of-home placements;
 
12the magnitude, frequency and circumstances of harm to the child;
 
13.whether the child has been the victim of repeated harm after the
initial report and interview by the department or other agency;
 
14.whether the child is fearful of living in or returning to the child’s
home;
 
15.the results of psychiatric, psychological, or developmental
evaluations of the child, the child’s parents, or other family
members, or others that have access to the child’s home;
 
16.whether there is a history of abusive or assaultive conduct by the
child’s parent(s), family or others who have access to the child’s
home;
 
17.whether there is a history of substance abuse by the child’s
parent(s), family or others who have access to the child’s home;
 
18.whether the perpetrator(s) of the danger, harm or injury to the
child is/are identified;
 
19.the willingness and ability of the child’s parents, family or
persons who have access to the child to seek out, accept, and
complete counseling services and to cooperate with and facilitate
an appropriate agency’s close supervision;
 
20.the willingness and ability of the child’s parents, family or
persons who have access to the child to effect positive
environmental and personal changes within a reasonable period
of time;
 
21.whether the child’s parents, family and/or persons who have
access to the child demonstrate adequate parenting skills,
including, but not limited to, providing the child and any other
child under the family’s care with:
 
a.minimally adequate health and nutritional care;
 
b.care, nurturance, and appropriate discipline consistent with
the child’s physical and psychological development;
 
                    c.       guidance and supervision consistent with the child’s safety;
 
                    d.       a safe and stable physical home environment;
 
                    e.       protection from repeated exposure to violence even though the
violence many not be directed at the child;
 
                    f.       an understanding of the child’s needs and capabilities;
 
          22.     whether an adequate social support system consisting of an extended
family and friends is available to the child.

 
          The first nine factors listed are taken verbatim from the seminal case of Holley
v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); the remaining factors are taken verbatim
from section 263.307 of the Family Code (“Factors in Determining Best Interest of
Child”). Tex. Fam. Code Ann. § 263.307(b) (Vernon 2002). These factors are not,
and are not intended to be, an exclusive or exhaustive list of factors the court or a jury
may consider in determining a child’s best interests, nor may all of them apply in
every termination proceeding. See In re C.H., 89 S.W.3d 17, 27 (Tex. 2002); accord
In re C.T.E., 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). 
          We review jury charge error under an abuse-of-discretion standard, and a trial
court abuses its discretion only when it acts without reference to any guiding
principle. Tex. Dep’t of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). 
Here, the criteria included in the court’s charge accurately reflected the common law
and statutory law, were intended to aid the jury in determining what was in the child’s
best interest, and could have resulted as readily in a finding favorable to the parent
as in one that was not favorable to the parent. This is not an abuse of discretion. See
id. (holding that because trial court tracked statutory language in instruction, trial
court did not abuse discretion). Accordingly, we hold that there was no error in the
jury charge simply because it included all of the factors enumerated in both Holley
and in section 263.307(b) of the Family Code.
 
          Rogers also contends that the jury charge instruction on endangerment was
erroneous. He bases this argument not on the law, but rather on his contention that
there was no evidence that he ever “engaged in any abusive, violent or aggressive
conduct towards any child”; he argues that the jury was permitted to base its finding
on his omissions, not his actions. 
          To terminate a parent’s rights to his child, the State must, in part, prove that the
parent committed at least one act enumerated in the Family Code; one of those
enumerated acts is conviction for injury to a child. See Tex. Fam. Code Ann. §
161.001(1)(L)(ix) (Vernon 2002). Rogers’ argument is thus fundamentally flawed
because it is clear from the record that the jury based its findings on the fact that
Rogers was convicted in a criminal proceeding of injuring his child—an affirmative
act of abuse on his part, not an omission.
          We hold there was no error in the jury charge.
          We overrule the second issue.
Admission of Entire DFPS Case File
          In his third issue, Rogers contends the trial court erred in admitting the entire
DFPS case file over his hearsay objection. We review a trial court’s evidentiary
rulings under an abuse of discretion standard. Owens-Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex. 1998).
          Properly authenticated records of regularly conducted business activity are
admissible as an exception to the hearsay rule. Tex. R. Evid. 803(6); In re N.C.M.,
66 S.W.3d 417, 419 (Tex. App.—Tyler 2001, no pet.). The record shows that DFPS
laid the proper predicate for admission of the file as a business record. Public records
are also excepted from the hearsay exclusion if, as here, they set forth matters about
which the observer has a legal duty to report and the observer is not a police officer
or other law enforcement officer. Tex. R. Evid. 803(8)(B); Bordman v. State, 56
S.W.3d 63, 70-71 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d). Rogers
contends that admission of the entire file was error, but offers no authority to support
this contention; nor have we found any. However, we need not address this issue
because Rogers did not preserve this complaint for appeal; accordingly we leave its
resolution for another time.
          Rogers’ complaint on appeal, that no proper predicate was laid for admission
of the file, does not comport with the general hearsay objection that he made at trial. 
A general hearsay objection does not preserve for appeal a challenge to a proper
predicate’s being made to admit business records. See Clark v. Walker-Kurth Lumber
Co., 689 S.W.2d 275, 281 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.). 
We therefore decline to address the propriety of admitting the entire file.
          We overrule the third issue.
 

Testimony by DFPS Caseworker
          In his fourth issue, Rogers contends the trial court erred in permitting the DFPS
caseworker to testify about an earlier abuse investigation of Rogers and the children’s
mother. In his fifth issue, he contends the DFPS caseworker should not have been
permitted to testify as an expert.
          The record shows that the caseworker testified several times, without objection,
concerning a 1995 accusation of abuse that had been made against Rogers. In
addition, details regarding this earlier incident were contained in the properly
admitted DFPS case file. Thus, the testimony about the earlier incident was
cumulative of other evidence. As such, its admission was not erroneous. See Owens-Corning Fiberglas Corp. v. Malone, 916 S.W.2d 551, 561 (Tex. App.—Houston [1st
Dist.] 1996), aff’d, 972 S.W.2d 35 (Tex. 1998). 
          We overrule the fourth issue.
          A person with specialized knowledge may testify about his or her own
observations under Rule 701 of the Rules of Evidence and may also testify about the
theories, facts, and data used in his or her area of expertise under Rule 702. Tex. R.
Evid. 701, 702. A person who has professional social work training and experience,
for example, can testify as both a lay and an expert witness. See Harnett v. State, 38
S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref’d) (holding that social worker
was permitted to testify under Rule 701 based on her personal observations of 
defendant and under Rule 702 based on her training and experience). Although the
caseworker here was asked if she had formed an opinion about what was in the best
interest of the children, she did not voice that opinion, contrary to Rogers’s assertion
that she expressed the “collective opinion” of the agency. As such, she was not
testifying as an expert witness, despite being able to testify as an expert, but only as
a fact witness.
          We overrule the fifth issue.
Testimony by Child Advocate Supervisor
          In his sixth issue, Rogers contends the trial court erred in permitting the child
advocate supervisor to testify. It is well settled that a guardian ad litem may testify
regarding a child’s best interest in a termination-of-parental-rights proceeding. See
Tex. Fam. Code Ann. § 107.002(d) (Vernon Supp. 2004-2005) (“The court may
compel the guardian ad litem to attend a trial or hearing and to testify as necessary for
the proper disposition of the suit”). Therefore, because the child advocate supervisor
here had been appointed as the children’s guardian ad litem, her testimony was
admissible. Even if it had not been admissible, Rogers did not preserve error because
he did not object to this testimony at trial—only counsel for his co-defendant
objected. See Tex. R. App. P. 33.1 (requiring defendant to make timely objection to
preserve error).
          We overrule the sixth issue.
Sufficiency of the Evidence
          In his seventh issue, Rogers contends that the evidence was legally and
factually insufficient to support termination of his parental rights.
          Standards of Review
          In a legal-sufficiency review, we review the evidence in a light that tends to
support the finding of the disputed facts and disregard all evidence and inferences to
the contrary. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001). 
If more than a scintilla of evidence exists to support the finding, the evidence is
legally sufficient. Id. More than a scintilla of evidence exists if the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds about
a vital fact’s existence. Id. at 782-83. 
          When a party attacks the factual sufficiency of an adverse finding on an issue
on which he did not have the burden of proof at trial, he must show on appeal that
there is insufficient evidence to support the adverse finding. Vongontard v. Tippit,
137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist] 2004, no pet.). To conduct this
review, we examine the entire record and consider and weigh all the evidence, both
in support of, and contrary to, the challenged finding. See Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996). We must uphold the finding unless the evidence that supports
it is so weak as to be clearly wrong or manifestly unjust. See Vongontard, 137
S.W.3d at 112. The appellate court must also bear in mind that the established
factual-sufficiency standard in parental-rights termination cases is “clear and
convincing” proof. See In re M.S., 115 S.W.3d 534, 550 (Tex. 2003).
          Termination of Parental Rights
          DFPS sought to terminate Rogers’s parental rights pursuant to section 161.001
of the Family Code. Tex. Fam. Code Ann. § 161.001 (Vernon 2002). To terminate
his parental rights under this section, DFPS was required to prove by clear and
convincing evidence that (1) the parent committed at least one act enumerated in
section 161.001(1), and (2) termination was in the child’s best interest. See id. §§
161.001(1),(2). One of the enumerated conditions is that the parent was convicted
of injury to a child. Id. § 161.001(1)(L)(ix). Although Rogers contends that his
criminal conviction cannot be used as evidence because it was on appeal at the time
of trial, that is not an accurate reflection of the statute, which makes no reference to
post-conviction proceedings. See id. (first prong satisfied if the parent has been
adjudicated criminally responsible for the death or serious injury of child); see also
In re D.S.A., 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.) (noting
father’s conviction for injury to child sufficient to establish statutory ground for
termination). DFPS asks us to take judicial notice that Rogers’ conviction for
injuring S.C.R. was upheld on appeal, which we do; but that fact is not necessary to
the disposition of this appeal. The fact that Rogers was convicted of injuring a child
was, itself, clear and convincing evidence that Rogers had committed an enumerated
act. 
          The evidence used to satisfy the first prong of the test may also be probative
of the second prong, i.e., the child’s best interest. In re C.H., 89 S.W.3d at 24. In
evaluating whether termination is in a child’s best interest, courts generally apply a
set of non-exclusive Holley factors: (1) the desires of the child; (2) the emotional and
physical needs of the child now and in the future; (3) any emotional or physical
danger to the child now and in the future; (4) the parenting ability of the individuals
seeking custody; (5) the programs available to assist those individuals to promote the
best interest of the child; (6) the plans for the child by those individuals seeking
custody; (7) the stability of the home; (8) the acts or omissions of the parent that may
indicate that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parents. See Holley, 544 S.W.2d at 372. Here,
Rogers’ conviction for injury to S.C.R. is very significant as to the third, fourth, and
eighth Holley factors—physical danger to the child in the future, parental ability, and
acts of the parent that indicate the parent-child relationship is not proper. In addition,
the record shows that the children were fearful of Rogers, each was in a successful
foster care placement, and the foster parents hoped to adopt the children. Rogers will
be serving a lengthy prison sentence for injuring S.C.R., which is an additional factor
indicating that termination is in the children’s best interest. We conclude that these
findings render the evidence legally sufficient to support termination. 
          It is not possible for this Court to contrast other evidence because there is not
any. At trial, Rogers refused to answer most questions, repeatedly “taking the Fifth.” 
Nor was there any conflicting evidence to indicate that termination was not in the best
interest of the children. There are no psychological evaluations, school reports, or
other evidence to indicate that the parent-child relationship was a healthy one and
should not have been terminated. 
          Rather than relying on rebuttal evidence, Rogers centers his argument that
termination was not in the children’s best interest around the issue of placement with
his relatives. In both his second and seventh issues, Rogers complains that DFPS did
not investigate any of his relatives’ homes for possible placement of the children, and
he suggests that termination of his parental rights was improper because of this failure
to investigate. The record shows, however, that none of Rogers’ relatives testified
that they had sought to have the children placed in their homes. 
          At each permanency hearing, the trial court evaluates the efforts of the agency
to identify relatives who could provide the child with a safe environment if the child
is not returned to a parent. See Tex. Fam. Code Ann. § 263.404(a)(2) (Vernon
2002). However, Rogers provides no authority to suggest that there is either a
statutory or a common-law duty imposed on DFPS to make such a placement or to
investigate such a placement before a party’s parental rights may be terminated. The
authority that Rogers cites to support his argument that DFPS was required to
investigate his relatives’ homes in order to terminate his parental rights is simply not
applicable to a situation in which the question of whether parental rights should be
terminated is being determined.


 The determination of where the child will be placed
is a factor in evaluating the child’s best interest, but it is not a bar to termination that
placement plans are not final or that placement will be with non-relatives. See In re
C.H., 89 S.W.3d at 28 (noting that lack of evidence about definite plans cannot be
dispositive factor because determinations regarding child’s best interest would be
subject to reversal on sole ground that adoptive family had yet to be found). We hold
that the evidence was clearly and convincingly factually sufficient to sustain
termination of Rogers’s parental rights to A.J.R., L.A.J., S.C.R., and P.L.R.
          We overrule the seventh issue.
          We affirm the trial court’s judgment.



                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Chief Justice Radack and Justices Keyes and Hanks.