**WESTERN BANK–DOWNTOWN, now known as Houston Commerce Bank, Appellant,**

v.

**Wallace CARLINE, Andy Wedaman, John Cathey, Thomas E. Hetherington, and Ray Smith, Appellees.**

No. 01–87–00336–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 1988.

Rehearing Denied Sept. 22, 1988.

Jeffery H. Hubbard, Mark C. Harwell, Morris & Campbell, Houston, for appellant.

Robert L. Collins, Daniel Kistler, Robert L. Collins & Associates, Houston, for appellees.

Before WARREN, DUGGAN and LEVY, JJ.

## OPINION

DUGGAN, Justice.

This appeal concerns whether the limited guarantors on a secured corporate promissory note are liable to the obligee bank for post-petition interest and attorney's fees after the corporate obligor filed for Chapter 11 protection under the federal bankruptcy laws.

Appellant, First Western Bank[1] ("the Bank"), appeals from a summary judgment awarding $111,530.28 to appellees, Wallace Carline, Andy Wedaman, John Cathey, Thomas F. Hetherington, and Ray Smith, all limited guarantors of the $1,000,000 promissory note executed by Tex–La Transportation, Inc. ("Tex–La") payable to the Bank. The judgment amount is the aggregate total of the sums the trial court found the Bank to have wrongly collected from the individual limited guarantors when the Bank pursued its claim of post-bankruptcy indebtedness by Tex–La for interest and attorney's fees. The Bank asserts four points of error; the limited guarantors urge two cross-points.

The Bank alleges that the trial court erred: (1) in granting summary judgment to the limited guarantors on the theory that Tex–La, as principal, owed no debt for post-petition interest and attorney's fees by reason of the Federal Bankruptcy Act, because the Bankruptcy Act does not extinguish a debt but simply prevents its enforceability as to the principal; (2) in denying the Bank's cross-motion for summary judgment urging that it is not liable to repay the limited guarantors "what is otherwise post-judgment interest and attorney fees of the principal because, notwithstanding the filing of a bankruptcy proceeding, the debt for such sums is not extinguished"; (3) in granting summary judgment for the guarantors based upon a federal bankruptcy proceeding commenced by Tex–La, the principal, because, under Tex-

as law, the guarantors have an unconditional obligation to pay the principal's indebtedness, which is unaffected by the principal's bankruptcy proceeding; and (4) in denying the Bank's cross-motion for summary judgment asserting that it is not liable to repay the guarantors what is otherwise post-judgment interest and attorney fees of the principal, because the guarantors have an unconditional obligation to pay the indebtedness, which is unaffected by the principal's bankruptcy proceeding.

On or about January 11, 1982, Tex–La executed its promissory note payable to the Bank on or before April 12, 1982, in the amount of $1,000,000. The note was secured by accounts receivable and other collateral[2]. The guarantors' limited guarantees were secured by their individual certificates of deposit and letters of credit.

On March 12, 1982, Tex–La filed for bankruptcy under chapter 11 of the United States Bankruptcy Code. In its schedules of assets and liabilities filed pursuant to the code, Tex–La listed the Bank as a creditor with a $1,000,000 claim, but indicated no interest due on the indebtedness. The Bank did not file a proof of claim to assert its right to payment, and did not challenge Tex–La's listing of its indebtedness to the Bank as $1,000,000 interest free.

The fair market value of the collateral securing the Bank's loan at the time of Tex–La's bankruptcy filing, plus the accounts receivable generated after the filing of the petition, was approximately $818,000. Since the time of the bankruptcy filing, accounts receivable, contract proceeds, and proceeds from insurance claims have been applied to reduce the loan's principal.

About June 1985, the Bank undertook to retire the outstanding balance on Tex–La's note by drawing on the certificates of deposit and letters of credit belonging to the

---

**1.** Appellant's name was subsequently changed to Western Bank–Downtown and then to Houston Commerce Bank.

**2.** Description of collateral in promissory note: All Accounts Receivable and Inventory now owned and hereafter acquired. Also secured

by Letters of Credit in favor of Borrower, either transferred to First Western Bank or with First Western Bank as joint beneficiary. Limited Guaranty: Thomas Hetherington, Wallace Carline, Ray Smith, Andy Wedaman, John Cathey.

limited guarantors. The Bank collected the following amounts:

$212,168.43 – unpaid principal
$ 26,657.19 – pre-petition interest
$103,044.66 – post-petition interest
$ 8,485.62 – attorney's fees

The limited guarantors do not dispute the amounts the Bank collected for unpaid principal and pre-petition interest; however, they contend that the Bank wrongfully charged and collected post-petition interest and attorney's fees from them.

When reviewing the grant of a summary judgment on appeal, the decisive question is whether the proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The burden of showing that there is no genuine issue of material fact is on the movant, and all evidence favorable to the non-movant will be taken as true and all doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

To determine the extent to which the limited guarantors are liable for Tex–La's note, we first look to the language of the guaranty agreements, intending to give effect to all of the provisions, if possible. *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249 (5th Cir.1985); *First Bank of Houston v. Bradley*, 702 S.W.2d 683 (Tex. App.—Houston [14th Dist.] 1985, no writ).

Each guarantor individually entered into an express limited guaranty agreement [3] for "any and all indebtedness, to the extent hereinafter mentioned, which [Tex–La], hereinafter referred to as Borrower, may now or at any time hereafter owe said Bank...."

■ A guarantor's liability on a debt is measured by the principal's liability unless a more extensive or more limited liability is expressly set forth in the guaranty agreement. *Houston Furniture Distrib., Inc. v. Bank of Woodlake, N.A.*, 562 S.W.2d 880, 884 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). To determine Tex–La's liability to the Bank, we consider the effect of Tex–La's bankruptcy filing.

■ 11 U.S.C. § 506(b) (1979) [4] designates which creditors of a debtor under chapter 11 are allowed post-petition interest and costs. Section 506(b) allows a secured creditor, who holds more value in collateral than in funds loaned out on the date of bankruptcy filing, to have an allocation of post-petition interest and costs to the extent that it is oversecured, provided such is permitted by the agreement under which the claim arose.[5]

On March 12, 1982, Tex–La's bankruptcy filing date, the Bank was neither oversecured nor eligible to benefit from § 506(b), and therefore could not receive post-petition interest and costs from Tex–La's bankruptcy estate. Thus, by virtue of its bankruptcy proceeding, Tex–La would *never* incur post-petition interest or costs on its indebtedness to the Bank.[6]

---

**3.** The individually agreed limited guarantee amounts were: Andy Wedaman—$150,000; Thomas Hetherington—$390,000; Roy Smith—$300,000; Wallace Carline—$150,000; John Cathey—$125,000.

**4.** (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which sum the claim arose.

**5.** There is a technical difference between a "secured creditor" in the sense of a U.C.C. transaction, and a "secured claimant" in a bankruptcy context. Although one may hold a perfected

security interest *pre*-petition, it is necessary to file a proof of claim with the bankruptcy court to ensure an allowed claim in the bankruptcy estate. Western, although a secured creditor pre-petition, apparently failed to file its proof of claim relative to Tex–La's estate. As such, it could never have "an allowed secured claim" under § 506(b).

**6.** This preclusion from, and non-accrual of, post-petition interest and attorney's fees is distinguishable from a debt that exists but is forgiven upon confirmation of the chapter 11 debtor's reorganization plan and subsequent discharge. 11 U.S.C. § 727 (1979). The purpose of § 506 is to benefit all secured claimants such that each gets a fairly proportional share of the debtor's estate; only those who can show an oversecured position are entitled to interest and

■ The rules of interpretation of guaranty agreements are well established. Where uncertainty exists about the meaning of a guaranty contract, and two reasonable constructions may be made, the reviewing court will apply the construction more favorable to the guarantor. *Clark v. Walker–Kurth Lumber Co.*, 689 S.W.2d 275 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The rule of strictissimi juris is applied to refrain from extending the guarantor's obligation by implication beyond the written terms of the agreement. *Id.* at 278.

All four of the Bank's points of error essentially rely on an interpretation of the guaranty agreement that would allow recovery of post-petition interest and attorney fees simply because the loan was made, guaranteed, and, but for the filing of bankruptcy, such charges would be owed until the loan was paid.

The alternate interpretation is that the limited guarantors do not owe post-petition interest and attorney's fees because these sums can never be charged against the principal, Tex–La. Appellees bound themselves to pay "any and all indebtedness ... *which Tex–La* ... may now or may at any time hereafter owe...." (Emphasis added.) We interpret this as excluding any liability for post-petition interest and attorney's fees because any other interpretation would extend their obligation beyond the written terms of the guaranty agreement.[7]

■ A summary judgment may be granted only if the record establishes a right thereto as a matter of law. *Baldwin v. Security Bank & Trust*, 541 S.W.2d 908 (Tex.Civ.App.—Waco 1976, no writ). If the guaranty instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391 (Tex.1983).

In *Salitan v. Magnus*, 62 N.J.Super. 323, 162 A.2d 883 (1960), creditors of a bankrupt corporation sued the corporation's guarantors for "the due payment of all ... obligations which the [corporation] may at any time owe to [plaintiffs]...." The New Jersey court granted summary judgment in favor of the guarantors, voiding any post-petition interest payment. The court reasoned:

The allowability of interest on claims against an estate in bankruptcy is a matter of federal law. The federal courts in this case have denied interest, and the judgment rendered relieves the bankrupt of that obligation.... Even if it were necessarily to be held that the federal courts denied interest because of a rule that was peculiarly assertable in bankruptcy proceedings, ... [still] the present claim made against the guarantors did not exist before bankruptcy. Nor has it come into existence after bankruptcy, for the general rule is that interest ceases to run as of the moment the petition is filed ... It follows that the claim for post-bankruptcy interest, here made against a third-party guarantor, has no foundation and is legally non-existent.... plaintiffs have proved no subsisting corporate liability to them and hence no right to recover under the guaranty.

*Id.*, 162 A.2d at 890–91.

In the case before us, the Bank's asserted right to post-petition interest and attorney's fees has no foundation and is legally non-existent as a matter of law. We conclude that the trial court did not err in granting the guarantors' motion for summary judgment.

Appellant's four points of error are overruled.

■ The guarantors/appellees, as cross-appellants, allege in two cross-points that the trial court erred in entering summary

costs thereupon (i.e., an extra share). The purpose of § 727, however, benefits the debtor, not the creditors, by allowing him an economic "fresh start." Whether a guaranty survives discharge is irrelevant to this appeal.

7. By contrast, we note that Western could have drafted a guaranty agreement requiring the appellees to pay interest and attorney's fees as guarantors, even if Tex-La's obligation ceased to exist by operation of law. *See United States v. Little Joe Trawlers, Inc.*, 776 F.2d at 1254; *United States v. Bruno*, 747 F.2d 53 (1st Cir.1984).

judgment in favor of the Bank on the issue of usury because: (1) usury is a defense available to a guarantor on a note, and (2) a genuine issue of material fact exists.

Tex.Rev.Civ.Stat.Ann. articles 5069–8.01 and 5069–8.02 (Vernon 1987) provide in plain language that the prescribed penalties for usury are forfeited "to the obligor." The usury defense is persoi.al to the debtor; penalty forfeitures are therefore restricted to the immediate parties to the transaction that created the usury defense. *Houston Sash & Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex.1979).

Because the guarantors were not immediate parties to the transaction, they are precluded from pursuing the initial debtor's remedy.

Both of the cross-appellants' points of error are overruled.

The judgment is affirmed.