United States Court of Appeals,

Fifth Circuit.

No. 91–1501.

RESOLUTION TRUST CORPORATION, as receiver for First Savings and Loan Association of Waco and First Savings and Loan Association of Temple, and as conservator of First Savings and Loan, F.A., Temple, Texas, Plaintiffs-Appellees,

v.

NORTHPARK JOINT VENTURE, et al., Defendants,

and

Steven S. Schiff, Charles G. Dannis, Stephen T. Crosson, Barry Howard, Robert L. Schiff, Charles H. Perry, Herbert G. Schiff and Telstar Partnership, Defendants-Appellants.

April 24, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, JOHNSON and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

This action originated in state court as a suit to recover the balance of a debt. The state court granted partial summary judgment against the defendants, concluding that the defendants were responsible for the unsatisfied indebtedness. After the case was removed to federal district court, the federal court declined to reconsider the state court ruling and entered a judgment against the defendants. Unable to conclude that the district court committed reversible error, this Court affirms.

I. FACTS AND PROCEDURAL HISTORY

In April 1985 Northpark Joint Venture ("Northpark"), a joint venture formed under Texas law, entered into a loan agreement with

Texas State Mortgages, Inc. ("TSM"). TSM advanced Northpark $9.15 million, which Northpark in a promissory note agreed to repay with interest. To secure repayment of the loan, Northpark executed a deed of trust granting TSM a lien upon certain real property located in Mississippi. In addition, the individuals who formed Northpark—Steven S. Schiff, Charles G. Dannis, Stephen T. Crosson, Barry Howard, Robert L. Schiff, Charles H. Perry, Herbert G. Schiff and Telstar Partnership—executed absolute and unconditional personal guaranties to repay up to $3,202,500 of the $9.15 million indebtedness.[1]

Two years later, Northpark defaulted on its obligation under the promissory note. Unable to collect repayment, TSM assigned its rights in the loan transaction to First Savings and Loan Association of Waco ("First Waco") and First Savings and Loan Association of Temple ("First Temple"). Pursuant to the terms of the loan agreement, First Waco and First Temple made a formal demand that Northpark and its individual guarantors cure the default. The default remained uncured, and First Waco and First Temple sold the Mississippi property in a public foreclosure sale for $3,637,500. The proceeds of the foreclosure sale were applied to the unpaid principal, leaving an unsatisfied indebtedness of $3,253,464.96 in principal and $1,200,683.11 in accrued interest.

---

[1]Two separate guaranties are in issue in this case. The first guaranty was signed by defendants Herbert G. Schiff, Robert L. Schiff, Steven S. Schiff, Charles H. Perry, Charles G. Dannis and Stephen T. Crosson, while the second guaranty was signed by Robert B. Howard. The separate guaranties are virtually identical in their terms.

Following foreclosure, First Waco and First Temple filed suit in Texas state court against Northpark and its individual guarantors to recover the amount of the unsatisfied indebtedness. The individual guarantors filed a counterclaim seeking a declaratory judgment that they were not liable under the note or their guaranties. Both sides then filed motions for summary judgment. In September 1989 the court granted partial summary judgment against the individual guarantors, concluding that the guarantors must bear personal liability for $32,202,500 of the unsatisfied indebtedness.[2]

While the action was still pending in state court, Northpark declared bankruptcy and was dismissed from the lawsuit.[3] Moreover, First Waco and First Temple became insolvent. The Resolution Trust Corporation ("RTC") was appointed to serve as the receiver of both First Waco and First Temple.[4] In August 1990 the RTC intervened in

_____

[2]As early as January 3, 1989, the state court had decided that it would grant partial summary judgment against the individual guarantors, but it reversed itself on reconsideration. Only after a second reconsideration did the state court finally conclude that the guarantors were liable for $3,202,500, the maximum amount of the guaranties.

[3]A guarantor may waive his right to have the maker of the underlying note made a party defendant. *Yandell v. Tarrant State Bank,* 538 S.W.2d 684, 688 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.).

[4]In July 1989 the Federal Home Loan Bank Board declared First Waco insolvent and appointed the Federal Savings and Loan Insurance Corporation to serve as receiver. The Bank Board then organized First Savings and Loan, F.A., Waco, Texas ("First F.A. Waco") and appointed the FSLIC to serve as conservator of the new savings and loan. Under a purchase and assumption agreement, the Bank Board transferred to First F.A. Waco almost all of First Waco's assets, including the promissory note and the personal guaranties. The Resolution Trust Corporation subsequently

the state court action and removed the case to federal court.  The individual defendants filed a motion for reconsideration of the partial summary judgment.  The federal district court denied the motion for reconsideration, ruling that the guarantors indeed were liable for $3,202,500 of the unsatisfied indebtedness, plus interest and "reasonable" attorneys' fees.

On May 16, 1991, the individual defendants filed a notice of appeal.  Four days later, the federal district court entered a "Final Judgment" denying all relief that the defendants had sought in their counterclaim and granting the RTC a specific award of $93,463.60 in attorneys' fees.

## II. DISCUSSION

The defendants argue that the district court erred in declining to reconsider the partial summary judgment that the state court had entered.  After removal of an action to federal district court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."  28 U.S.C. § 1450 (1988).  A prior state court order in essence is federalized when the action is removed to federal court, although

---

replaced the FSLIC as receiver of First Waco and as conservator of First F.A. Waco.  Months later, the Office of Thrift Supervision declared First Temple insolvent and appointed the RTC receiver.  Under another purchase and assumption agreement, the Office of Thrift Supervision designated the RTC conservator of a new institution, First Savings and Loan, F.A., Temple, Texas, which received almost all of the assets once belonging to the defunct First Temple.

the order "remains subject to reconsideration just as it had been prior to removal." *Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1303 (5th Cir.1988).

Federal procedure governs the enforcement of a prior state court order in a case removed to federal court. *Id.* Thus, where the prior state court order is a summary judgment, the federal court must ensure that the order is consistent with the requirements of Rule 56(c) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 56(c) (permitting summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). If the federal court declines to reconsider the state court summary judgment, then the federal court certifies that the order is indeed consistent with Rule 56(c). The standard of review is the same as if the federal court itself had entered the order: this Court will review the record de novo, resolving all reasonable doubts and drawing all reasonable inferences in favor of the party opposing the summary judgment. *FDIC v. Hamilton,* 939 F.2d 1225, 1227 (5th Cir.1991).

Before we reach the merits of the summary judgment in this case, we must consider two preliminary questions: (1) whether this Court has acquired the requisite appellate jurisdiction and (2) whether Mississippi or Texas law governs the relative rights of the parties.

A. *Appellate Jurisdiction*

A timely notice of appeal is a mandatory prerequisite to the exercise of appellate jurisdiction. *United States v. Robinson,* 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960). Rule 4(a)(1) of the Federal Rules of Appellate Procedure requires an appellant to file its notice of appeal "within 30 days *after* the date of entry of the judgment or order appealed from." Fed.R.App.P. 4(a)(1) (emphasis added). The defendants in this case filed their notice of appeal four days *before* the district court entered its final judgment. Consequently, under Rule 4(a)(1), their notice of appeal was premature.

A premature notice of appeal is not necessarily ineffective. In some circumstances, Rule 4(a)(2) of the Federal Rules of Appellate Procedure will permit an appellate court to exercise its jurisdiction despite a premature notice. Rule 4(a)(2) provides that a notice of appeal "filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Fed.R.App.P. 4(a)(2). This rule recognizes that, unlike a tardy notice of appeal, certain premature notices do not prejudice opposing parties and therefore "should not be allowed to extinguish an otherwise proper appeal." *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.,* --- U.S. ----, 111 S.Ct. 648, 651, 112 L.Ed.2d 743 (1991).

In *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.,*

the United States Supreme Court attempted to determine the extent to which Rule 4(a)(2) salvages a premature notice of appeal. The plaintiff in *FirsTier Mortgage* filed a suit alleging that the defendant breached several insurance contracts. The district court granted summary judgment in favor of the defendant, but declined to impose final judgment until the defendant submitted proposed findings of fact and conclusions of law. Before the district court could issue its final judgment, the plaintiff filed a notice of appeal from the summary judgment ruling. The Supreme Court concluded that the notice of appeal, although premature, was effective to invoke the jurisdiction of the federal appellate courts. 111 S.Ct. at 653. According to the Court, a premature notice of appeal relates forward to final judgment and serves as an effective notice from the final judgment whenever it follows "a decision that *would be* appealable if immediately followed by the entry of judgment." *Id.* (emphasis in original).

Like the notice of appeal in *FirsTier Mortgage,* the notice of appeal in the instant case is an effective notice. The defendants in this case appeal the district court order refusing to reconsider the summary judgment in favor of the plaintiffs. At the time that the state court first entered the summary judgment, this decision was a partial judgment that determined the liability of the individual guarantors, but did not purport to determine the liability of defendant Northpark. Thus, at that time, the summary judgment would not have been appealable, even if the state court had entered judgment. However, by the time that the federal

district court entertained the motion to reconsider the summary judgment, Northpark was bankrupt and had been dismissed from the action. Since Northpark was no longer a party, the order refusing to reconsider the summary judgment adjudicated the rights of all the remaining parties to the action. This order would have been appealable if the district court had immediately entered judgment. *See Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 829 n. 6 (5th Cir.1992) (district court can enter judgment if it "has effectively disposed of all the claims before it"); *see also Jetco Electronic Indus., Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973). Accordingly, although filed before final judgment, the notice of appeal in this case serves as an effective notice from the final judgment.[5] This Court can exercise its appellate jurisdiction.

B. *Choice of Law*

In refusing to reconsider the summary judgment entered in state court, the federal district court reasoned that Texas law required the defendants to bear responsibility for the amount of their guaranties. The defendants argue that the district court should have applied Mississippi law, not Texas law. The RTC concedes that if Mississippi law governs the substantive issues in

---

[5]Prior to the decision in *FirsTier Mortgage,* the Fifth Circuit had reasoned that, as long as the parties in a case had not filed postjudgment or posttrial motions, a notice of appeal was effective even if filed before the district court announced a final judgment. *See Alcom Electronic Exchange, Inc. v. Burgess,* 849 F.2d 964, 967 (5th Cir.1988); *Alcorn County v. United States Interstate Supplies,* 731 F.2d 1160, 1165–66 (5th Cir.1984). Because we conclude that the facts in the instant case fall within the exception described in *FirsTier Mortgage,* we do not address whether the rule in *Alcom Electronic Exchange* and *Alcorn County* survives *FirsTier Mortgage.*

this lawsuit, then summary judgment would have been inappropriate. *See Lake Hillsdale Estates, Inc. v. Galloway,* 473 So.2d 461, 466 (Miss.1985); *Mississippi Valley Title Ins. Co. v. Horne Constr. Co.,* 372 So.2d 1270, 1272 (Miss.1979). Nonetheless, we conclude that the district court did not err in applying Texas law.

A federal court is required to follow the choice of law rules of the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In this case, therefore, the federal district court must look to the Texas choice of law rules. Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 678 (Tex.1990).[6] But in those cases in which the parties have not agreed to an enforceable choice of law clause, "the law of the state with the most significant relationship to the particular substantive issue will be applied." *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984).

---

[6]Texas has adopted section 187 of the Restatement (Second) of Conflict of Laws. *DeSantis,* 793 S.W.2d at 678. Section 187 states the appropriate choice of law rule governing contract cases involving a contractual choice of law clause. In most such cases, the law of the state chosen in the clause should be applied. However, under subsection 2(b) of section 187, the law of the state chosen in a contractual choice of law clause should *not* be applied if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state ... and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2)(b) (1971). We do not address this exception here.

Both the promissory note and the deed of trust contain separate choice of law clauses.[7]  The promissory note specifies that the laws of the state of Texas shall govern its terms.  On the other hand, the deed of trust specifies that Mississippi law shall govern its terms, and it further provides:

> [If the Grantor defaults on its obligations, the] Trustee ... shall ... sell all or any part of the Property after giving notice of the time, place and terms of sale as required by Section 89-1-55 of the Mississippi Code of 1972....  *Grantor shall remain liable for any deficiency on the Obligations.*

Deed of Trust ¶ 9, at 3 (emphasis added).  The defendants contend that the choice of law clause in the deed of trust is enforceable.  They argue that the plaintiffs brought an action for a deficiency judgment and that, because the deed of trust creates the right to a deficiency judgment, the choice of law clause in the deed of trust should govern.

The flaw in this argument is the erroneous assumption that the deed of trust creates the right to a deficiency judgment.  "An action against guarantors of a note for a deficiency following foreclosure on real property is an action involving enforcement of the underlying debt." *Resource Savings Ass'n v. Neary,* 782 S.W.2d 897, 902 (Tex.App.—Dallas 1989, writ denied).  It does not arise out of the real estate foreclosure. *Id.  See also First Commerce Realty Investors v. K-F Land Co.,* 617 S.W.2d 806, 809 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).  Thus,

---

[7]Unlike the other documents, the guaranties do not contain a choice of law clause.

the promissory note and the guaranties, not the deed of trust, create the right to a deficiency judgment against the guarantors of a note. The deficiency judgment clause in the deed of trust has no effect in this case.[8]

Because the deed of trust does not provide the source for the action against the defendants, the choice of law clause in the deed of trust is not enforceable: the parties cannot be said to have agreed that Mississippi law would govern a deficiency judgment action against the guarantors. If anything, it appears that the parties agreed to the application of Texas law. The promissory note, which in part creates the right to a deficiency judgment against the defendant guarantors, states that Texas law governs the obligations arising under the note and loan agreement. Texas State Mortgages, the predecessor in interest of plaintiff RTC, was a direct party to this promissory note and presumably helped negotiate the choice of law clause. The individual defendants agreed to guaranty the enforcement of the note and, as a consequence, essentially ratified the choice of law clause. *See First Commerce Realty Investors,* 617 S.W.2d at 809.

But even if the parties did not agree to the application of Texas law, the same result ensues. In the absence of an

---

[8]In determining whether the choice of law clause in the deed of trust is "enforceable," this Court must look to Texas law because Texas supplies the applicable choice of law rules. *DeSantis,* 793 S.W.2d at 678. Texas cases therefore determine whether a deficiency action against the guarantors of a note arises out of the deed of trust.

enforceable choice of law clause, the law of the state that has "the most significant relationship to the transaction and the parties" must be applied. *See DeSantis,* 793 S.W.2d at 678 (quoting Restatement (Second) of Conflict of Laws § 188 (1971)).[9] The state that has the most significant relationship to the transaction and the parties in this case is Texas. First, Texas has greater

---

[9]Section 188 of the Restatement, which the Texas Supreme Court adopted in *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 678-79 (Tex.1990), states the choice of law rule governing contract cases that do not involve an enforceable choice of law clause. It provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place of contracting,
> >
> > (b) the place of negotiation of the contract,
> >
> > (c) the place of performance,
> >
> > (d) the location of the subject matter of the contract, and
> >
> > (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188 (1971).

contacts with the transaction and the parties:  (1) the parties negotiated and executed the note and guaranties in Texas;  (2) First Waco and First Temple are Texas residents;  (3) all of the defendants, except one, were Texas residents or domiciliaries at the time that the note and guaranties were executed;  and (4) the note and guaranties, by their express terms, are wholly performable in Texas.  Under the Texas choice of law rules, these contacts alone can be conclusive in determining the appropriate state law. *See Cook v. Frazier,* 765 S.W.2d 546, 549 (Tex.App.—Fort Worth 1989, no writ) (applying Texas law because Texas residents negotiated and executed the contracts in question and made all contract payments in Texas).

Moreover, Texas has a greater interest in the application of its law.  At stake here is whether Texas residents are liable under the personal guaranties they executed to a Texas corporation. Texas has a direct interest in ensuring that Texas debts are handled properly and that Texas debtors and creditors are treated fairly.  By contrast, Mississippi has little interest in this case. In enacting their guaranty laws, Mississippi legislators and judges intended to protect Mississippi citizens.  There is no reason why Mississippi would have an interest in the application of its laws to resolve the claims of foreign creditors against foreign debtors. *Cf. Duncan,* 665 S.W.2d at 422.  Thus, the relevant interests, as well as the relevant contacts, favor the application of Texas law.

We conclude that, under either the choice of law clause in the

promissory note or the most significant relationship test, Texas law governs the substantive issues in this case. The district court did not err in determining that the choice of law clause in the deed of trust is unenforceable.

C. *The Merits of the Summary Judgment*

The principal issue in this case is whether the defendants must bear responsibility for the unsatisfied indebtedness. The guaranties state that the defendants must pay the "indebtedness or other liability ... which Northpark Joint Venture ... may now or at any time hereafter owe" its creditors. According to the defendants, this provision in the guaranties limits their liability to the amount that Northpark would be obligated to pay First Waco and First Temple. Under the terms of the promissory note and loan agreement, Northpark's debt is non-recourse, and Northpark cannot be held liable for any unsatisfied indebtedness remaining after foreclosure of the property in the deed of trust. The defendants argue that, because Northpark is not liable for the amount of debt in the note, they also cannot be held liable.

The Texas rules for interpreting the breadth of a guaranty agreement are well established. In construing a guaranty contract, the primary concern of the reviewing court is to ascertain the intent of the parties. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If the guaranty is ambiguous, then the court must apply the "construction which is most favorable to the guarantor." *Id.* at 394 n. 1. *See also Clark v. Walker-Kurth Lumber Co.,* 689

S.W.2d 275, 278 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).  But if the guaranty "can be given a certain or definite meaning or legal interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."  *Coker,* 650 S.W.2d at 393.

On motion for reconsideration of the state court summary judgment, the federal district court ruled that the guaranties which the defendants had executed were not ambiguous.  The court reasoned that "[d]espite the fact that Northpark is not liable for the indebtedness underlying the Note, the indebtedness continues to exist."  District Court Opinion at 5.  Noting that the guaranties required the defendants to pay the "indebtedness," the district court concluded that the defendants must pay $3,202,500 of the remaining balance of the debt,[10] and accordingly, it declined to reconsider the state court summary judgment.

Like the district court, we are persuaded that the guaranties in this case are not ambiguous.  The word "indebtedness" is a legal term of art describing "[t]he state of being in debt, *without regard to the ability or inability of the party to pay the same.*"  Black's Law Dictionary 691 (6th ed. 1990) (emphasis added).  The fact that a debt is non-recourse does not change the fact that the debtor is "in debt" to a creditor.  Even though Northpark cannot be

---

[10]The guaranties limit the defendants' liability to a maximum of $3,202,500.  All of the parties agree that this amount is the most that the RTC can recover under the guaranties.  The defendants contend, however, that the RTC is not entitled to recover any sum.

held liable for the amount of debt in its promissory note, it still incurred an "indebtedness" when it signed the note. The amount of the indebtedness is the total sum reflected in the note, plus interest and other costs. Since the defendants guarantied to pay "any and all indebtedness" which Northpark owed its creditors under the note, the defendants should be required to satisfy the debt up to the express limit of their guaranties.[11] Any other construction of the guaranties would elevate form over substance. *Cf. FDIC v. University Anclote, Inc.,* 764 F.2d 804, 807 (11th Cir.1985).[12]

---

[11]In *Western Bank–Downtown v. Carline,* 757 S.W.2d 111 (Tex.App.—Houston [1st Dist.] 1988, writ denied), a Texas court of appeals addressed a situation similar to the situation in the instant case. The principal in *Carline,* Tex–La Transportation, Inc., executed a $1,000,000 promissory note to First Western Bank. The guarantors agreed to pay "any and all indebtedness" which Tex–La "may now or may at any time hereafter owe" the Bank. *Id.* at 114. Tex–La subsequently declared bankruptcy, and the Bank sought to collect from the guarantors the unpaid principal, post-petition interest and attorneys' fees. The guarantors did not dispute that they were liable for the unpaid principal. They argued, however, that they were not liable for the interest and attorneys' fees. The court of appeals agreed. Noting that the Federal Bankruptcy Act extinguished Tex–La's obligation to pay any post-petition interest and attorneys' fees, *id.* at 113 & n. 6, the court concluded that the guarantors also could not be held liable for the interest and fees. *Id.* at 114.

> While the facts in *Carline* are similar to those here, *Carline* is distinguishable. In *Carline,* the debt was *extinguished;* thus, there was no remaining "indebtedness" for which the guarantors would have been liable. In the instant case, though, the debt continues to exist, even though it is non-recourse. The principal may not be liable for the unsatisfied "indebtedness," but there is a remaining "indebtedness" for which the guarantors can be held liable.

[12]The facts in *FDIC v. University Anclote, Inc.* are similar to the facts in the instant case. University Anclote executed a non-recourse promissory note in favor of Metropolitan Bank and Trust Company. James C. Petersen executed a guaranty in which he agreed to pay "all indebtedness and liabilities" which University Anclote owed Metropolitan Bank. After University Anclote defaulted, the FDIC, as successor of the defunct Metropolitan Bank, sought recovery from Petersen on his guaranty. Petersen

We recognize that, as a general rule, the liability of a guarantor is equal to that of its principal. *Technical Consultant Serv., Inc. v. Lakewood Pipe of Texas, Inc.,* 861 F.2d 1357, 1363 (5th Cir.1988) (interpreting Texas law). But we also recognize that there is an exception to the general rule: if the guarantor agrees, a guaranty contract can impose greater liability upon the guarantor than the note imposes upon the principal. *See Western Bank-Downtown v. Carline,* 757 S.W.2d 111, 114 n. 7 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Simpson v. MBank Dallas, N.A.,* 724 S.W.2d 102, 110 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). By agreeing to pay the "indebtedness," the defendants agreed to accept greater liability for the debt.

The defendants complain that they did not *intend* to "obligate themselves to pay the non-recourse portion" of the debt. However, when the guaranties are examined in light of the underlying note, it appears clear that the defendants indeed intended to accept greater liability for the debt. The note provides that the guarantors of the debt are excluded from its non-recourse protection:

> Notwithstanding the promise to pay contained herein and notwithstanding any of the other provisions of this Note or of any other instrument evidencing, securing the payment of or

argued that he could not be held liable because the original promissory note was non-recourse. Applying Florida law, the Eleventh Circuit ruled that the guaranty was not ambiguous. 764 F.2d at 807. It noted that "[m]erely because Anclote cannot be held liable for a deficiency judgment does not mean that Anclote did not incur an indebtedness when it signed the note." *Id.* at 806.

executed in connection with this Note (*except to the extent otherwise provided with respect to the guaranties which are executed on even date herewith and which guarantee portions of the indebtedness evidenced hereby* ("Guaranties") and except to the extent otherwise provided in the Profit Sharing Agreement and except as otherwise provided in the immediately following sentence), the undersigned shall have no liability for the indebtedness and obligations of the undersigned pursuant to the Deed of Trust or any other instrument securing this Note or the loan evidenced hereby or executed in connection herewith or for the accrued and unpaid interest on this Note....

Promissory Note at 4 (emphasis added).[13]  The defendants cannot reasonably argue that they did not intend to obligate themselves to pay the non-recourse portion of the note when the note itself excludes guarantors from its non-recourse protection.[14]

In sum, we find that under Texas law the defendants must bear responsibility for the unsatisfied indebtedness, up to the limit stated in their guaranties.  While Northpark is not liable for the

---

[13]When a guaranty agreement is absolute and unconditional, the defendants are deemed to have incorporated all of the terms of the note into the guaranty. *Hopkins v. First Nat'l Bank,* 551 S.W.2d 343, 345 (Tex.1977); *First Bank of Houston v. Bradley,* 702 S.W.2d 683, 686 (Tex.App.—Houston [14th Dist.] 1985, no writ).  Under Texas law, a guaranty is absolute and unconditional if it "requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor." *United States v. Vahlco Corp.,* 800 F.2d 462, 466 (5th Cir.1986). The guaranties in this case do not require a condition precedent to enforcement other than Northpark's default.  The fact that the guaranties limit the guarantied amount to $3,202,500 does not preclude them from being absolute and unconditional. *See Arndt v. National Supply Co.,* 633 S.W.2d 919, 923 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

[14]The defendants suggest that the non-recourse provision of the note does *not* exclude them from its protection.  Indeed, according to the defendants, the non-recourse provision supports their argument that they are not liable for the unsatisfied indebtedness because it recognizes that the guaranties only "guarantee portions of the indebtedness."  At most, however, we believe that this language simply reflects the fact that the guaranties are limited to a maximum of $3,202,500.

amount of its debt, it nonetheless has incurred an indebtedness. Because the guaranties unambiguously state that the defendants must pay the unsatisfied "indebtedness," the defendants have agreed to accept greater liability for the debt. This is especially true since the note itself excludes guarantors from its non-recourse protection. We conclude that the district court did not err in refusing to reconsider the state court summary judgment.

D. *"Reasonable" Attorneys' Fees*

The defendants argue that the district court erred in granting the RTC a specific summary judgment of $93,463.60 in attorneys' fees. The guaranties provide for the recovery of "reasonable" attorneys' fees, and according to the defendants, the use of the term "reasonable" renders the amount of recoverable attorneys' fees a genuine issue of material fact. We disagree.

A party that moves for summary judgment bears the burden to establish that its opponent failed to raise a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, then the movant can satisfy its summary judgment burden by submitting evidentiary documents that establish all of the elements of the claim or defense. *Id.* The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

In the instant case, the RTC satisfied its initial summary judgment burden. It submitted an affidavit from its attorney, G. Dennis Sheehan, who described the billable rate and the hours expended and concluded that "[t]he total amount of $93,463.60 is a reasonable amount for services rendered in this matter." The burden then shifted to the defendants to demonstrate that summary judgment was inappropriate. The defendants could have filed a counter affidavit contesting the billable rate that the RTC claimed was "reasonable," or they could have filed an affidavit arguing that the billable hours claimed in the Sheehan exhibit were unreasonable. However, the defendants did neither of these things. They have failed to sustain their burden to demonstrate that summary judgment was inappropriate. *See* Fed.R.Civ.P. 56(e).

## III. CONCLUSION

We are unable to conclude that the district court erred in granting summary judgment in favor of the RTC. Accordingly, we affirm the judgment of the district court.

AFFIRMED.