# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20418

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2014

Lyle W. Cayce
Clerk

JRG CAPITAL INVESTORS I, L.L.C.,

Plaintiff–Appellee.

versus

MAURICE DOPPELT,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-3299

Before DAVIS, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:*

In this case applying a surety contract, defendant Maurice Doppelt (the guarantor) appeals a judgment for plaintiff JRG Capital Investors I, L.L.C.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20418

("JRG") (the current note holder), following a bench trial. Because the surety contract provided for a guaranty only of the borrower's recourse obligations—of which none remain—we reverse and render judgment for Doppelt.

I.

An entity called 839 East 19th Street, L.P., executed a five-million-dollar Promissory Note ("the Note") to Citibank, N.A. (JRG's predecessor-in-interest), collateralized by, among other things, an interest in improved real property, namely an apartment building. Just over three weeks later, Doppelt executed a Guaranty of Borrower's Recourse Obligations ("the Guaranty"). Shortly after Citibank sold the Note to JRG, JRG foreclosed on the property. After foreclosure, there remained a substantial deficiency in the Note.

The Note created what was generally a nonrecourse debt, meaning that the borrower could not be held personally liable for any deficiency. The Note provided, however, a number of exceptions that—if triggered—would have resulted in the borrower's bearing recourse obligations. The parties do not dispute that the borrower never triggered any of its recourse obligations and that the Note remained a nonrecourse note following JRG's foreclosure. The dispute is whether Doppelt guaranteed only the borrower's recourse obligations, of which there are now none, or whether he guaranteed the entire value of the Note.

The parties point to a number of different provisions in both the Note and the Guaranty as manifesting their respective proffered interpretation of Doppelt's guaranty. Four provisions are central to this inquiry: section 20 of the Note and sections 1, 3, and 4 of the Guaranty.

Section 20 generally delimits the borrower's recourse obligations. It provides, in subsection (A), that the "Borrower shall not be personally liable for the payment and performance of the indebtedness and obligations" arising

under the Note, limiting the holder of the Note to foreclosing on the collateral. But subsection (B) contains a host of exceptions that would trigger recourse obligations on the borrower, including, *inter alia*, fraud or misrepresentation; failure of the borrower to pay the lender gross receipts from renting out the property; engaging in conduct designed to prevent the lender from exercising its interest in the real property; selling the property without the lender's consent; failing to pay the lender any insurance proceeds; failing to pay taxes on the property; failing to maintain the property; releasing tenants from their obligations without the lender's consent; and removing personal property. Subsection (B) also provides that "the Nonrecourse Provisions [shall not] be construed to release or relieve any guarantor of any indebtedness or obligations of Borrower to Lender from full personal liability for the payment and performance of such guarantor's obligations under any guaranty now or hereafter entered into in connection with the Loan or the Property."

Section 1 of the Guaranty defines Doppelt's obligations to the noteholder. It provides, in relevant part, what Doppelt promised to the lender:

1. GUARANTY

Guarantor . . . guarantees and promises to Lender: (i) the prompt, complete and full payment and performance when due . . . of Borrower's Recourse Obligations; and (ii) in addition to all other amounts due hereunder, the prompt, complete and full payment, upon demand, of all attorneys' fees, costs and expenses . . . , and all other costs and expenses incurred by Lender in enforcing any rights or remedies under or otherwise in connection with this Guaranty or any of the Loan Documents . . . . All obligations of Borrower described in clauses (i) and (ii), above, are referred to herein collectively as the "Obligations." All amounts due, debts, liabilities and payment obligations described in clauses (i) and (ii), above, are referred to herein as the "Indebtedness."

Section 3 of the Guaranty provides that Doppelt's obligations are "independent of and in addition to the obligations of the Borrower," with the balance of the section making clear that the holder of the Note may bring a separate

No. 13-20418

action against Doppelt without bringing an action against or joining the borrower; providing for joint and several liability "if Guarantor consist of more than one person"; and providing that a release or substitution of any one guarantor does not affect the obligations of another.

Finally, section 4 of the Guaranty provides several "waivers" by the guarantor. The only possibly relevant waiver, in section 4(i)(i), provides that the borrower may collect against Doppelt without first foreclosing on any real property interest and that, upon foreclosure, "Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower any sums that Guarantor pays to Lender pursuant to this Guaranty Agreement."

## II.

We examine these various contractual provisions to answer this question: Did Doppelt provide a complete guaranty of the full value of the Note or only a guaranty of the borrower's recourse obligations? We address this question *de novo*.[1]

In Texas, "[a] guarantor is a 'favorite of the law,' and any uncertainty as to the meaning of his contract of guaranty should be resolved in his favor."[2] Other cases from Texas indicate that a "guaranty agreement is to be strictly construed and may not be extended beyond its precise terms by construction

---

[1] *Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 245 (5th Cir. 2012) ("A guaranty is, of course, a form of contract, and we review a district court's construction of any contract *de novo*.").

[2] *FDIC v. Woolard*, 889 F.2d 1477, 1480 (5th Cir. 1989) (citing *Sw. Sav. Ass'n v. Dunagan*, 392 S.W.2d 761, 766 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.); *Coker v. Coker*, 650 S.W.3d 391, 394 (Tex. 1983); *W. Bank-Downtown v. Carline*, 757 S.W.2d 111, 114 (Tex. App.—Houston [1st Dist.] 1988, writ denied)).

## No. 13-20418

or implication."[3] The primary objective, as with all contract construction, is to ascertain the true intentions of the parties as expressed in the instrument. *Coker*, 650 S.W.2d at 393 (citations omitted).

## III.

On the basis of the contracts and Texas law, Doppelt's interpretation is correct:  He provided a guaranty only of the borrower's recourse obligations, of which there are now none.  He did not provide a guaranty of the total value of the Note.

## A.

Of the various provisions the parties emphasize, only section 1 of the Guaranty actually describes the scope of the promise made by Doppelt.  For instance, section 20 of the Note describes a Guaranty made elsewhere and in a separate agreement:  It speaks of not "reliev[ing] any guarantor . . . from full personal liability . . . of *such* guarantor's obligations *under any guaranty now or hereafter entered into*" in connection with the Note.  The Note was executed more than three weeks before the Guaranty, which actually defines "such" obligations referenced by the Note.

Section 3 of the Guaranty does provide that Doppelt's obligations are independent of those of the borrower, but that provision is manifestly concerned with litigation.  Of the fourteen lines of section 3, JRG directs our attention only to the first ten words of the first sentence providing that "[t]he obligations of Guarantor hereunder are independent of and in addition to the obligations of Borrower," and JRG would have us stop reading at that point.

---

[3] *Woolard*, 889 F.2d at 1480 (citing *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978); *McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971)).

No. 13-20418

The remainder of the sentence provides that a separate action may be maintained against Doppelt even if the borrower is not itself sued or joined in the suit. And the remaining thirteen lines provides for joint and several liability where the guarantor is more than one person and for other litigation-related stipulations. (The provision is largely superfluous because Doppelt is a natural person and the only guarantor.) Plainly, there is nothing in section 3 suggesting that Doppelt promised more than a guaranty of the borrower's recourse obligations.

Section 4(i)(i) at first seems more relevant, but it too references a guaranty made elsewhere. It provides that the lender may collect against Doppelt even if "by foreclosing on the real property collateral, [the lender] has destroyed any right Guarantor may have to collect from Borrower." But the provision, again, references a Guaranty made elsewhere by describing the right to collect from Doppelt as "any sums that Guarantor pays *to Lender pursuant to this Guaranty Agreement*."

That leaves us with the only provision of the two contracts that actually defines Doppelt's promise, § 1 of the Guaranty. That provision includes two guaranty clauses. The first is the only one that speaks clearly to the issue before us and provides that Doppelt guaranteed "(i) the prompt, complete and full payment and performance when due . . . *of Borrower's Recourse Obligations*." The second is much lengthier and seems to be aimed at protecting the lender's interests by ensuring that Doppelt would pay for the costs of the lender enforcing the Guaranty or its rights under the Note:

> (ii) in addition to all other amounts due hereunder, the prompt, complete and full payment, upon demand, of all attorneys' fees, costs and expenses . . . , and all other costs and expenses incurred by Lender in enforcing any rights or remedies under or otherwise in connection with this Guaranty or [the Note] . . . .

The plain language of § 1 of the Guaranty indicates that Doppelt

6

provided a guaranty for only (i) the borrower's recourse obligations and (ii) the costs associated with the Lender enforcing its rights under the Guaranty and Note. There is no ambiguity in the Guaranty, and we give effect to the manifest mutual intent of the parties to bind Doppelt to provide a guaranty *only* for the borrower's recourse obligations. *See Coker*, 650 S.W.2d at 393.

B.

The plain language of the Guaranty and absence of any ambiguity (patent or latent) as to the scope of Doppelt's obligations under the Guaranty are enough for us to reverse and render judgment in his favor. We are nevertheless bolstered in our confidence in this judgment given the contextual evidence.

As to context, the full name of the Guaranty is "Guaranty of Borrower's *Recourse Obligations*." This is an odd title if, in fact, Doppelt was providing a guaranty of not just the borrower's recourse obligations but the full value of the Note where the borrower had no further recourse obligations.

Further, both the Guaranty and the Note use different language to describe the total value of the Note when the parties so intended. For instance, in section 20(B) of the Note (providing for exceptions to the nonrecourse provisions), the parties provided that upon the occurrence of any of the events listed in that provision, "nothing contained in any of the Nonrecourse Provisions shall relieve Borrower from personality liability for the payment and performance *of the indebtedness and obligations evidence or arising under this Note*." This language was plainly directed at ensuring the personal liability of the Borrower for the full value of the Note upon the occurrence of one of the section 20(B) events.[4] Similarly, in the Guaranty the parties define the term

---

[4] These sorts of quasi-non-recourse loans, where loans are generally non-recourse with

"indebtedness" to include "All amounts due, debts, liabilities and payment obligations described [in section 1 of the Guaranty]." Yet, the parties decided not to use similar language to define the scope of Doppelt's guaranty; rather, they opted to limit his guaranty to "Borrower's Recourse Obligations."

The foregoing language is in direct contrast with another guaranty contract drafted, as this one was, by Citibank, which more explicitly provided for an unlimited guaranty. In *Citibank, N.A. v. Skar, LLC*, we see a grammatically similar guaranty provision but with a major difference:

> Guarantor absolutely, unconditionally and irrevocably, jointly and severally, guarantees . . . (i) the prompt, complete and full payment and performance when due . . . *of all of Borrower's present and future indebtedness and obligations, whether monetary or non-monetary, under the Loan Documents* (including, without limitation, the payment of principal and interest and other sums due under the Note) (as used herein, the term 'indebtedness' shall have its most comprehensive meaning . . . ) and (ii) in addition to all other amounts due hereunder, the prompt and complete payment of all attorneys fees, costs and expenses . . . subject to the limitation that Guarantor's obligations and liability pursuant to this subparagraph 1(a) shall be limited to Guarantor's payment (as opposed to Borrower's payment) of the principal amount of $2,100,000.00 (the "Guaranteed Amount"), together with interest which shall accrue on the Guaranteed Amount from the date written demand for payment of the Guaranteed Amount, and all interest thereon from the date, shall be paid in full. All obligations of Borrower described in clauses (i) and (ii) above are referred to collectively as the "Obligations." All amounts due, debts, liabilities and payment obligations described in clauses (i) and (ii), above, are referred to herein as the "Indebtedness."

48 Conn. L. Rptr. 865 (Conn. Super. Ct. 2009) (some alterations in original). The contrast between these two otherwise word-for-word carbon-copy Citibank-drafted provisions bolsters the conclusion that the phrase "of Borrower's Recourse Obligations" was a deliberate manifestation of the parties' intent

---

several exceptions, are familiar to Texas law. *See, e.g.*, *Pineridge Associates, L.P. v. Ridgepine, LLC*, 337 S.W.3d 461, 465–66 (Tex. App.—Fort Worth 2011, no pet.).

to limit Doppelt's guaranty.[5]

Finally, the elaborate nonrecourse provisions of the Note also provide evidence that the parties were well aware of the difference between the borrower's recourse and nonrecourse obligations. The Note provided twelve situations in which the borrower would trigger recourse obligations (*viz.*, personal liability). These provisions comprise the largest portion of the contract between the borrower and the lender and, in elaborate detail, describe exactly when the borrower would have recourse obligations. The elaborateness of the provisions governing and cabining the borrower's recourse obligations suggests that the parties were purposeful when they limited Doppelt's guaranty to "Borrower's Recourse Obligations."[6]

## C.

The proffered contrary interpretation by JRG is untenable. According to JRG, the second clause of the Guaranty (specifically the phrase "in addition to all other amounts due hereunder") and section 20 of the Note all prove that Doppelt was providing a guaranty of the full value of the Note, not just the borrower's recourse obligations.

---

[5] It is not uncommon for these sorts of quasi-nonrecourse obligations to be coupled with limited or "special" guaranties. *See* Michael J. Guyerson, & David M. Little, *Bad Boy Guaranties: Know What To Do When the Lender Comes for You*, COLO. LAW., September 2013, at 29 ("Nonrecourse loans are common, but most come with a twist. In its basic form, a bad boy guaranty is part of a commercial nonrecourse loan transaction where the liability of the borrower and the third-party guarantor are transformed from nonrecourse liability . . . to full recourse liability in the event of certain triggering actions or "bad boy' events."); Rick L. Knuth, *The Commercial Loan Guaranty-Types & Techniques*, UTAH B.J., July/August 2008, at 14, 18; Peter A. Alces, *An Essay on Independence, Interdependence, and the Suretyship Principle*, 1993 U. ILL. L. REV. 447, 455 (1993).

[6] *See also* John C. Murray & Randall L. Scott, *Enforceability of Carveouts to Nonrecourse Loans: An Evolution*, 48 REAL PROP. TR. & EST. L.J. 217, 237–41 (2013) (discussing several cases where a guarantor became liable for the full value of the borrower's debt upon the triggering of recourse provisions).

Such a construction of the second clause of the Guaranty would have the phrase "in addition to all other amounts due hereunder" render superfluous basically the entirety of the guaranty clause. If that phrase were meant implicitly to provide a guaranty for the full value of the borrower's obligations under the Note, there was no reason to provide a separate guaranty for the borrower's recourse obligations. And there would be no reason to provide that Doppelt would guaranty the costs of enforcing the lender's rights under the Note, because the Note already provided for such reimbursement (thus becoming part of the borrower's obligations under the Note).[7]

Section 20 of the Note, for its part, does not define any guaranty. Rather, it contemplates a guaranty to be made later. The parties could well have, later, entered into a guaranty that did cover the full value of the Note and not just the borrower's recourse obligations, and section 20 would have accommodated it just as well as it accommodates Doppelt's more limited guaranty. But such is not the guaranty the parties ultimately agreed on later.

JRG also directs our attention to the "last antecedent rule of construction" to argue that the phrase "[a]ll amounts due, debts, liabilities and payment obligations described in clauses (i) and (ii), above, are referred to herein as the 'Indebtedness'" (found at the end of section 1 of the Guaranty) is properly interpreted to mean "the full value of the note" because the prepositional phrase "described in clauses (i) and (ii)" cabins only the phrase "payment obligations." That contention is beside the point. Supposing the JRG is right in its construction of this phrase as referring to the total value of the Note, Doppelt never provided—as the guarantor provided in *Skar*—a guaranty of the borrower's

---

[7] Also, relying on this phrase is misplaced because it is question-begging. The precise question in this case is what "amounts [are] due [under the Guaranty]." This phrase references an amount due but does not tell us what that amount is or how to ascertain it.

"Indebtedness" or even of "[a]ll amounts due, debts, [and] liabilities." He provided a guaranty only of "Borrower's Recourse Obligations."

## D.

Finally, Texas law is favorable to guarantors in suits like this one. We are to resolve ambiguities in Doppelt's favor, and we are also directed "strictly [to] construe" the extent of his guaranty. *See, e.g.*, *Reece*, 566 S.W.2d at 297. Yet, to affirm the judgment for JRG, we would have to go further than resolving ambiguity against Doppelt; we would have to accept as proper a decidedly awkward and unnatural reading of the plain language of the Guaranty and ignore the contextual evidence leading us in the same direction as the plain language of the contract.

The judgment is REVERSED, and judgment is RENDERED for Doppelt.